(1 App. Div. 494.)

SUAREZ v. DE MONTIGNY et al.

(Supreme Court, Appellate Division, First Department.　February 14, 1896.)

1. TRUSTS—BENEFICIARY—CONSENT IN WRITING—IMPLIED POWERS.
   A provision in an agreement creating a trust in personalty that there shall be no disposition of the trust estate except with the written consent of the beneficiary is valid. 33 N. Y. Supp. 292, affirmed.

2. SAME—PURCHASER—NOTICE OF TRUSTEE'S AUTHORITY.
   One who purchases a security from a trustee, knowing that it belongs to the trust estate, is bound to ascertain what power the trustee has as to such disposition. 33 N. Y. Supp. 292, affirmed.

3. SAME—RECOVERY OF PURCHASE MONEY.
   A purchaser of a mortgage from a trustee unauthorized to sell has no equity to hold and enforce it until the money which he paid the trustee for it is returned to him, unless it be shown that the trust estate received and had the benefit of such money.

Appeal from special term, New York county.

Action by Benigno S. Suarez, executor, etc., against Isabella De Montigny and others, to foreclose a mortgage. From a judgment in favor of defendants (33 N. Y. Supp. 292), plaintiff appeals. Affirmed.

The action was brought to foreclose a mortgage given by defendant Isabella De Montigny to Morrison, substituted trustee of the separate estate of the defendant Isabel Von Linden. Originally the mortgage was for $40,000, but was paid down to $25,000. It was thereafter assigned to Francis H. Weeks, who had been substituted as trustee of such estate, and by such substituted trustee assigned to plaintiff, who paid $25,000 therefor. Subsequently the Central Trust Company, defendant, was substituted as trustee of the estate in place of Weeks. The mortgagor, De Montigny, the trust company, as trustee, and the cestui que trust, Von Linden, defend the action on the ground that the plaintiff is not the owner and has no right to foreclose the mortgage. The trust was created by a marriage settlement agreement made November 29, 1876, at Stuttgart, in the kingdom of Wurtemburg. By the agreement it was provided that all of Madame Von Linden's property, of every kind, from the date of her marriage, should be and remain her own, for her sole and separate use, and free from the control of her husband, the same as though she remained single. In and by such agreement, she conveyed to her mother, Blandina B. Andrews, all her property in trust, to collect and pay over to her during her natural life the income therefrom, and after her death to transfer, convey, and deliver the property to such persons as she should designate by her will, or, in the absence of the will, to such persons as should be entitled to the same under the laws of distribution and descent of intestates' property in the kingdom of Wurtemburg. It was further provided by the agreement that the trustee should have full power for the purposes of the trust to sell, transfer, convey, invest, and reinvest such property, but not without the consent of the cestui que trust expressed in writing, under her proper hand, and that the trustee should hold the property for the sole use of the cestui que trust, and keep the same as then invested, or with her written consent, and not otherwise, change the investment from time to time. Morrison was substituted as trustee in the place of Mrs. Andrews about October 18, 1883. The mortgage in question was given June 24, 1884. Weeks was substituted as trustee in the place of Morrison August 27, 1889, and the mortgage was thereupon assigned to him as such trustee. Weeks assigned the mortgage to plaintiff December 22, 1890, and received the $25,000 therefor. The next day, December 23, 1890, Weeks took in his own name, and not as trustee, a mortgage made by D. C. Weeks for $25,000, and paid the money therefor. There was some correspondence between the trustee Weeks and Madame Von Linden, which it may be well to consider. December 2, 1889, Madame Von Linden wrote to the trustee that it would be pleasant if he could increase her income. March 13, 1890, she wrote that the idea of an increase of her income through his kindness was pleasant. May 6, 1890, the trustee wrote to her that he had been making a few changes in investments to increase the rate of interest, the income on which would come in soon. In November, 1890, she wrote thanking him for the proposed increase of income. These letters were written before the transfer of the mortgage, December 22, 1890. After the transfer of the mortgage, and April 6, 1891, the trustee wrote her that, pursuant to her request, he would send to her banker in Stuttgart $30,000, to be invested for him as trustee, and the income to be paid over to her; that he had arranged to get cash on a mortgage for $25,000; and that, until he got the cash on some other mortgage, he would advance the remaining $5,000 himself. In this letter he sent her a writing, to be signed by her and returned to him, to the effect that she requested and consented that he should convert into money enough of the property in his hands as trustee to produce $30,000, and remit the amount to her banker in Stuttgart, to be invested by him, and the income paid to her, and wherein she agreed that the trustee should not be liable for any loss of the money so remitted or the income therefrom. This paper was executed by Madame Von Linden, and returned to the trustee April 21, 1891. May 7, 1891, the trustee sold and trans-

ferred the D. C. Weeks mortgage to Dix, executor, etc., for $25,000, and received the money, which he deposited to his credit in his own private account. May 12, 1891, he wrote Madame Von Linden that he had received the request and consent for the $30,000, and would arrange in a few days to make the remittance to her banker. Thereafter, and July 8, 1891, the trustee remitted to Madame Von Linden's banker in Stuttgart $25,000, and September 18, 1891, she wrote thanking him for the remittance. In the list of mortgages furnished by the trustee to Madame Von Linden, January 1, 1892, the mortgage in suit was not included, but at the bottom of such list was an item, cash cost of draft for £5,000, remitted to Stuttgart banker. April 11, 1892, Madame Von Linden wrote to the trustee acknowledging the receipt of the list of mortgages, and referred to this item, and said that the list was interesting, and she noticed there had been many changes. July 1, 1892, the trustee rendered an account to Madame Von Linden, in which, under the date of July 1, 1891, there was a credit of $625, for interest on the mortgage in suit, which it was there said had been sold, and the proceeds remitted to the Stuttgart banker, July 6, 1891, and there was no credit in any of the subsequent accounts for interest on this mortgage. It seems that the $25,000 remitted to Stuttgart was attempted to be applied by the banker to the payment of overdrafts by Madame Von Linden, but the trustee never consented to this application, nor did Madame Von Linden.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and WILLIAMS, JJ.

Chase Mellen, for appellant.

Alfred J. Taylor and Robert Kelley Prentice, for respondents.

WILLIAMS, J. There seems to be no doubt that a valid trust was created by the marriage settlement agreement, and that such trust, being for the benefit, not only of Madame Von Linden, but her appointees or descendants, was irrevocable. The trustee had no power to transfer the mortgage without the written consent of Madame Von Linden. The agreement so provided, and the trustee had no power to dispose of trust estate, or any part of it, except such power as he derived from the instrument creating the trust. While in some cases such power might be implied from the nature of the trust and the provisions of the trust agreement, yet where, as in this case, it was provided there should be no disposition of the trust estate except with the written consent of Madame Von Linden, no such power can be implied, and no transfer can be made unless there was a compliance with the conditions prescribed in the trust agreement. The provision in the agreement necessarily excludes all other powers. Kissam v. Dierkes, 49 N. Y. 602; O'Connor v. Waldo, 83 Hun, 489, 31 N. Y. Supp. 1105.

When the plaintiff took the assignment of the mortgage from the trustee, he knew that the mortgage was part of the trust estate; the assignment was in the name of the trustee. And, this being so, he was bound to inquire and ascertain what the terms of the trust agreement were, and what powers the trustee had as to the disposition of the trust estate. It is said that the plaintiff was only bound to inquire whether the trustee under the agreement had a general power to change the securities, to vary the investments, and, if he had, that the plaintiff would be protected in taking the assignment, if he acted in good faith. Perry, Trusts & Trustees, §§ 225, 814. That might be true in a case where the agreement

merely provided for a change of securities, the varying of investments, in general terms; but where, as in this case, the power to so change securities and vary investments was limited by the condition requiring the consent of the cestui que trust, the inquiry to ascertain whether the power existed at all would also disclose the limitation.

It was said by Andrews, C. J. (Kirsch v. Tozier, 143 N. Y. 395, 38 N. E. 375), that:

"Persons dealing with a trustee must take notice of the scope of his authority. An act within his authority will bind the trust estate or beneficiaries as to third persons acting in good faith and without notice, although the trustee intended to defraud the estate, and actually did accomplish his purpose by means of the act in question. It has frequently been held that a person dealing with an executor or trustee, who, from the nature of his office and the terms of the trust, has power to satisfy or transfer securities of the estate or to vary the investments from time to time, is not bound to go further and ascertain whether in fact the act of the executor or trustee is justified, and that no breach of the trust was intended. It is sufficient for his protection that he acts in good faith, and, if the act of the executor or trustee is justified by the terms of the power, the party dealing with him will be protected."

A party who deals with a trustee in the purchase from him of trust securities is bound to look into the trust agreement to ascertain the power of the trustee. If he finds there merely a general power to change securities or vary investments, or if such power can fairly be implied from the nature of the trust or terms of the agreement, he will then be protected in taking a transfer of such securities, if he acts in good faith, whatever the result may be to the trust estate. But, if the power which is found in the trust agreement is limited by a condition like the one found in this case, the party is chargeable with notice of such limitation as a part of the power itself.

There was, therefore, no legal transfer of this mortgage to the plaintiff unless Madame Von Linden consented in writing to such transfer. No consent was given by her in express terms, but it is claimed that a consent sufficient to answer the condition in the trust agreement was contained in her letters written to the trustee before and after the transfer, in view of the circumstances disclosed by the evidence. Having considered carefully all the correspondence and circumstances upon which this claim was based, we are unable to see that the claim is well founded.

Madame Von Linden had no knowledge that the mortgage had been transferred until long after the assignment had been made and the money paid therefor had been received by the trustee. Upon the receipt of the money, the trustee misappropriated the same, without the knowledge or consent of Madame Von Linden. The next day after he received the money, he purchased another mortgage, paying $25,000 for it, and took this mortgage in his own name; and when, between four or five months later, he sold this new mortgage, he deposited the money received therefor to his own credit in his private account, and mingled it with other funds in his hands; and there is no claim made that this money was again separated

from such other funds in his hands until two months later, when he sent $25,000 to the Stuttgart banker. Madame Von Linden was never notified by the trustee, in express terms, that the mortgage in suit had been sold or transferred or converted into money, and it is only sought to establish such knowledge on her part or notice to her of the transfer by the accounts and lists of mortgages sent to her by the trustee long after the transfer had been made. These papers would not have been likely to draw her attention to the transfer, and we do not think it can be said under these circumstances that she ever gave the consent to the transfer which was fairly required by the trust agreement.

The only remaining question is whether the plaintiff has any equity in the mortgage which entitles him to hold and enforce it until the money which he has paid to the trustee therefor is returned to him. This equity, if any exists, must be based upon a finding of fact that the trust estate actually received and had the benefit of the $25,000. In absence of this finding, no such equity would exist. The trial court refused to find the fact, as alleged, that the $25,000 received from the plaintiff for the mortgage in suit was the same money which was six months later remitted to the Stuttgart banker. In this, we think, the court was correct. The money so received from the plaintiff was at once misappropriated by the trustee, and was not returned to the trust estate. When so misappropriated, it entirely lost its identity. It could no more be said that the money remitted to the Stuttgart banker was the money paid by the plaintiff to the trustee than that it was the money derived by the trustee from other trust property which he had disposed of, and the proceeds of which he had also misappropriated to a considerable amount. It cannot be said that the trust estate received and had the benefit of plaintiff's money by reason of this remittance any more than that it received and had the benefit of other moneys derived from the disposition of the trust estate and misappropriated by the trustee. The object of this provision in the trust agreement was to protect the estate against misconduct on the part of the trustee, and misappropriation of its funds, by requiring Madame Von Linden to consent to any change of securities or varying of investments, and therefore to know when they occurred, and be able to look after and require the trustee to account for any moneys received from securities so disposed of; and its further purpose was to prevent any sale of securities, and the misappropriation by the trustee thereof, which he might be guilty of in the absence of knowledge on the part of Madame Von Linden. It is true that the plaintiff, though legally chargeable with knowledge and notice of the condition in the trust agreement as to the written consent of Madame Von Linden, did not in fact know of it, and had no knowledge or suspicion of any design on the part of the trustee to misappropriate the money so paid over to him. The plaintiff has lost his money, and might have some equity but for the consideration that the equity of the trust estate is equally strong. It has never received the moneys paid upon the transfer of mortgage to plaintiff,

and ought not to lose the mortgage itself. The loss must fall upon one of the parties. It should manifestly be borne by the plaintiff, who was guilty of negligence in not discovering the condition in the trust agreement, rather than by the trust estate, which has been free from any negligence in the matter.

The conclusion to which we arrive is that the judgment should be affirmed, with costs. All concur.