THE FIRST NATIONAL BANK of Paterson, New Jersey, Appellant, *v.* THE NATIONAL BROADWAY BANK in the City of New York and SETH M. TUTTLE, as Alleged Trustee, etc., Respondents.

1. TRUST — TRANSFER OF TRUST PROPERTY.  Any person who receives property, knowing that it is the subject of a trust and that it has been transferred in violation of the duty or power of the trustee, takes it subject to the right, not only of the *cestui que trust*, but also of the trustee, to reclaim possession.

2. IMPUTED KNOWLEDGE OF TRUSTEE'S VIOLATION OF TRUST CONDITIONS.  Knowledge of the trustee's violation of the trust conditions will be chargeable to the person dealing with him, if the facts were such as, in reason, to put him upon inquiry and to require him to make some investigation, as the result of which the true title and authority of the trustee might have been disclosed ; and he will then be regarded as having constructive notice of the terms of the trust, whence the trustee derives his power to act.

3. UNLAWFUL PLEDGE OF TRUST SECURITIES BY TRUSTEE, AUTHORIZED BY BENEFICIARY OF LIFE INTEREST — BURDEN AND RIGHT OF PLEDGEE.  One who loans money to a business concern owned by a life beneficiary of a trust, upon the pledge, by the trustee, of stock certificates belonging to the trust estate and made out in the name of the trustee as such — the pledge not being for the benefit of the trust on its face, but requested by the beneficiary — is bound to investigate the trustee's power, and if he would thereby be informed of trust conditions forbidding the trustee from pledging the property, he is not entitled, on default in payment of the loan, to the stock, but he may be entitled to the dividends accumulated and to be declared thereon during the life of the beneficiary who authorized the pledge and whose business was benefited thereby, where the beneficiary was not incapable of alienating his interest.

4. Power to Pledge.  A power to pledge is not included in a power to sell and reinvest; and a direction in a trust instrument, for the reinvestment of the proceeds of sales of trust securities, implies that the settlor of the trust did not intend that the securities should be pledged.

5. Trust Created in Another State — Alienation of Interest by Beneficiary — Non-application of 1 R. S. 730, § 63.  Where a trust for the profits of lands was created in a state as to which there is no proof that the common-law rule permitting the alienation of trust interests has been changed, and the trustee was appointed by a court of that state, and a loan upon the pledge of trust securities representing proceeds of the land was made in another state, by authority of the beneficiary of a life interest therein, the trust is not to be regarded as governed by the laws of this state, and hence the beneficiary is not made incapable of alienating his interest in the trust, by the statute of this state (1 R. S. 730, § 63) on the subject.

*First Nat. Bank of Paterson, N. J.,* v. *Nat. Broadway Bank,* 22 App. Div. 24, modified.

(Argued June 13, 1898; decided October 4, 1898.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 26, 1897, affirming a judgment in favor of the defendants, entered upon a decision of the court on trial at Special Term dismissing the complaint upon the merits.

The plaintiff commenced this action to compel the Broadway Bank to transfer to its name certain shares of capital stock, issued to and standing in the name of " Philo P. Hotchkiss, trustee."  The defendant bank denied the plaintiff's ownership and set up the claim of title made thereto by Seth M. Tuttle, as alleged trustee of the shares, in succession to Hotchkiss.  Tuttle was subsequently brought into the action and made a party defendant, upon his application, in order to prosecute his claim of ownership.

The general history of the trust is, that in 1857 William H. Imlay, of Hartford, Connecticut, deeded certain Michigan lands to Chester Adams, of the same place, as trustee.  By the terms of the trust he was to sell the lands and to invest the net proceeds in good bank stocks in his own name as trustee, with power to sell such stocks and to reinvest in other bank stocks.  He was to pay the net income equally to Imlay's

three unmarried daughters, for their sole and separate use, etc. The issue of any daughter was to take in fee the share held in trust for the mother, upon her death, and upon the death of one or more of the daughters, without issue surviving, the trust share or shares were to vest in the survivors or survivor. Adams, the trustee, died subsequently, leaving a will, wherein he appointed one Bartholomew as his successor in the trust; pursuant to a power to that effect contained in the trust deed. Subsequently, Bartholomew resigned as trustee and Hotchkiss was, by an order of the Probate Court of Hartford, Connecticut, appointed trustee in succession. At the time of his appointment, Alice, one of Imlay's daughters, had died, without issue, and her one-third share in the trust had vested in her two surviving sisters, Isabel and Georgiana. Isabel had, also, died; but left issue surviving; to whom her portion of the trust estate was paid. Georgiana married Hotchkiss and has two daughters. When Hotchkiss was substituted as trustee, under the deed of trust, the defendant Broadway Bank transferred the stock in question into his name, upon receiving the order mentioned; which referred to the trust deed. Some time after his appointment, Hotchkiss, who held himself out as manager of "Hotchkiss & Co.," presented a note for $12,000 of that firm; which the plaintiff discounted upon the pledge of collateral securities, which included the stock in question and which were taken up, by means of the proceeds of the discounted note, from the Home Insurance Company, by which company the collaterals had been held to secure a former note of Hotchkiss & Co. The plaintiff received at the time a writing signed by Georgiana Hotchkiss, which authorized her husband to borrow on the "stocks standing in his name as trustee for my benefit and owned by me." Subsequently, upon default in payment of the note, the plaintiff, pursuant to the terms of the stock note discounted by it, sold the stocks at public auction and purchased them thereat. Upon requesting of the defendant bank a transfer of the stock and the issuance of a new certificate, the request was refused and, thereupon, this action was instituted. Hotchkiss, having been con-

victed of grand larceny and sent to prison, was removed as trustee upon the application of Alice Richards, a daughter of Georgiana Hotchkiss, the beneficiary of the deed of trust, and Tuttle was appointed trustee in his stead by an order of the Supreme Court in this state. The concern of Hotchkiss & Co., whose note was discounted by the plaintiff, appears to have consisted only of Georgiana I. Hotchkiss; the business being managed by Philo P. Hotchkiss.

*Charles F. Brown* for appellant. Plaintiff's relation to the stock in question is that of a *bona fide* purchaser. The doctrine of constructive notice cannot be invoked to charge the plaintiff with notice of the provisions of the trust deed, and its duty of inquiry in respect thereto was properly performed. (*Acer* v. *Westcott*, 46 N. Y. 384; *Ware* v. *Egmont*, 31 Eng. L. & E. 89, 97; *Jones* v. *Smith*, 1 Hare, 55; 1 Phill. 244; *Kirsch* v. *Tozier*, 143 N. Y. 397; *Anderson* v. *Blood*, 152 N. Y. 293, 295, 296; *Jones* v. *Williams*, 24 Beav. 62; *Ashton* v. *Atlantic Bank*, 3 Allen [Mass.], 217, 218, 222; *Calais Steamboat Co.* v. *Van Pelt*, 2 Black, 377; *Buttrick* v. *Holden*, 13 Metc. 355; *Matter of Bright's Trusts*, 21 Beav. 430, 434; *Cox* v. *Coventon*, 31 Beav. 378; *Isham* v. *Post*, 71 Hun, 184; 141 N. Y. 105; *Field* v. *Schuffelin*, 7 Johns. Ch. 150.) The original transaction between the plaintiff and the trustee was a conditional sale. (*McLeod* v. *Drummond*, 14 Ves. 352; affd., 17 Ves. 151; Perry on Trusts, § 768; *Strougill* v. *Anstey*, 1 DeG., M. & G. 635, 642–645; *Dillaye* v. *Commercial Bank of W.*, 51 N. Y. 345; *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Leitch* v. *Wells*, 48 N. Y. 585, 613; *Williams* v. *Woodard*, 2 Wend. 487, 492.) The court below erroneously denied plaintiff's special claim on the life interest of Georgiana I. Hotchkiss, represented by the accumulated and accumulating dividends on the stock, on the ground that her interest in the trust fund is inalienable under the rule governing trust estates in this state. The law of Connecticut governs the rights of the parties in interest here as respects this trust estate. (*Cross* v. *U. S. Trust Co.*, 131 N. Y. 330,

339–349; *Dammert* v. *Osborn*, 140 N. Y. 38, 39, 40, 41; *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Leitch* v. *Wells*, 48 N. Y. 585; *Holmes* v. *Broughton*, 10 Wend. 75; *Starr* v. *Peck*, 1 Hill, 270; *Abell* v. *Douglass*, 4 Den. 305; *Wright* v. *Delafield*, 23 Barb. 515, 516; *White* v. *Knapp*, 47 Barb. 549; *Wilcox S. P. Co.* v. *Green*, 9 Hun, 347; *People* v. *Chase*, 28 Hun, 310; *Kellar* v. *Paine*, 34 Hun, 167; *Trebilcox* v. *McAlpine*, 46 Hun, 469; *Lane* v. *Wheelright*, 69 Hun, 180; *Franzen* v. *Zimmer*, 90 Hun, 103; *Graves* v. *Cameron*, 9 Daly, 152; *Davis* v. *Garr*, 6 N. Y. 124, 134; *People ex rel.* v. *Brady*, 56 N. Y. 182, 191; *Harris* v. *White*, 81 N. Y. 543, 544; *Leonard* v. *Columbia St. Nav. Co.*, 84 N. Y. 48; *Debevoise* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 377; *Vanderpoel* v. *Gorman*, 140 N. Y. 568.) There is no right shown in this cause, in behalf of any one, that can be recognized in impeachment of the plaintiff's title. (*Boone* v. *Citizens' Sav. Bank*, 84 N. Y. 87; *Wetmore* v. *Hegeman*, 88 N. Y. 72; *Matter of Waring*, 99 N. Y. 114; *Bunn* v. *Vaughan*, 1 Abb. Ct. App. Dec. 253; *Butler* v. *State M. L. Assur. Co.*, 55 Hun, 301; *Brater* v. *Hopper*, 77 Hun, 244; *Wildey* v. *Robinson*, 85 Hun, 362; *Matter of Foster's Will*, 15 Hun, 387; *People* v. *Norton*, 9 N. Y. 176; *Cuthbert* v. *Chauvet*, 136 N. Y. 326, 328; Story on Conflict of Laws, § 513; *Dixon's Executor* v. *Ramsey*, 3 Cranch, 319; *Kerr* v. *Moon*, 9 Wheat. 565; *Vaughn* v. *Northrop*, 15 Pet. 1; *Noonan* v. *Bradley*, 9 Wall. 394; *Metcalf* v. *Clark*, 41 Barb. 45; *Field* v. *Gibson*, 20 Hun, 273; *Matter of Webb*, 11 Hun, 124; *Gray* v. *Ryle*, 18 J. & S. 198; *Montalvan* v. *Clover*, 32 Barb. 190; *Brown* v. *Brown*, 1 Barb. Ch. 189, 216–218.)

*G. E. Waldo* for Seth M. Tuttle, as trustee, respondent. Plaintiff had notice of the trust. (*Acer* v. *Westcott*, 46 N. Y. 384, 388, 389; *Baker* v. *Bliss*, 39 N. Y. 70, 74; *Williamson* v. *Brown*, 15 N. Y. 354, 362; 1 Story's Eq. Juris. [13th ed.] 406, § 400; *Shaw* v. *Spencer*, 100 Mass. 382, 388; *Sewall* v. *Boston Water Power Co.*, 4 Allen, 277, 282; *White* v. *Price*, 39 Hun, 394, 396, 397; *Swan* v. *Produce Bank of*

*N. Y.*, 24 Hun, 277 ; 1 Perry on Trusts [4th ed.], 289, § 225 ;
2 Perry on Trusts, 451, § 810 ; *Duncan* v. *Jaudon*, 15 Wall.
165, 175, 176 ; *Budd* v. *Munroe*, 18 Hun, 316.)   Knowledge
of the president of the bank is notice to the bank.   (1 Mora-
wetz on Corp. [2d ed.] § 540c ; 1 Beach on Priv. Corps.
§ 185 ; *Ditty* v. *Domin. Nat. Bank*, 75 Fed. Rep. 769, 771 ;
*Niblack* v. *Cosler*, 80 Fed. Rep. 596, affg. 74 Fed. Rep.
1000.)   Plaintiff was bound to take notice of the scope of
authority of the trustee.   (2 Perry on Trusts [4th ed.],
§ 831 ; *Swan* v. *Produce Bank*, 24 Hun, 277 ; *Budd* v.
*Munroe*, 18 Hun, 316 ; *Duncan* v. *Jaudon*, 15 Wall. [U. S.]
165 ; *Kirsch* v. *Tozier*, 143 N. Y. 390, 395 ; *Suarez* v. *De
Montigny*, 12 Misc. Rep. 259, 264 ; 1 App. Div. 494, 499 ;
153 N. Y. 678.)   The plaintiff cannot rely on good faith and
want of knowledge of the limitation on the trustee's author-
ity.   (2 Perry on Trusts [4th ed.], § 814 ; *Kirsch* v. *Tozier*,
143 N. Y. 390, 395 ; *Shaw* v. *Spencer*, 100 Mass. 382 ; *Green*
v. *Givan*, 33 N. Y. 343 ; *Suarez* v. *De Montigny*, 12 Misc.
Rep. 259, 266 ; 1 App. Div. 494 ; 153 N. Y. 678.)   Plaintiff
was bound to inquire.   (*Shaw* v. *Spencer*, 100 Mass. 382, 390,
391 ; *Loring* v. *Brodie*, 134 Mass. 453, 459 ; 27 Am. & Eng.
Ency. of Law, 264 ; *Suarez* v. *De Montigny*, 12 Misc. Rep.
259, 264 ; 1 App. Div. 494 ; 153 N. Y. 678 ; *White* v. *Price*,
39 Hun, 394 ; 108 N. Y. 661 ; *Kirsch* v. *Tozier*, 143 N. Y. 390.)
No inquiry as to the terms of trust was made.   (*Shaw* v. *Spen-
cer*, 100 Mass. 382, 391 ; *Gerard* v. *McCormick*, 130 N. Y.
261 ; *Budd* v. *Munroe*, 18 Hun, 316 ; *Suarez* v. *De Montigny*,
1 App. Div. 494 ; *Mashall* v. *De Cordova*, 26 App. Div. 615,
618.)   Power to sell does not include power to pledge trust
property.   (*Shaw* v. *Spencer*, 100 Mass. 382, 389, 390 ;
*Loring* v. *Brodie*, 134 Mass. 453, 459 ; *Huldenby* v. *Spof-
ford*, 1 Beav. 390 ; *Page* v. *Cooper*, 16 Beav. 396 ; *Bloomer*
v. *Waldron*, 3 Hill, 361, 366, 367 ; *Albany F. Ins. Co.* v.
*Bay*, 4 N. Y. 9, 19 ; *Russell* v. *Russell*, 36 N. Y. 581.)   The
beneficiary cannot alienate her interest.   (*Bramhall* v. *Fer-
ris*, 14 N. Y. 41 ; *Lent* v. *Howard*, 89 N. Y. 169, 181 ;
*Graff* v. *Bonnett*, 31 N. Y. 9, 13, 15 ; *Tolles* v. *Wood*, 16

Abb. N. C. 1, 9; *Cook* v. *Lowry*, 95 N. Y. 103, 111; *Cochrane* v. *Schell*, 140 N. Y. 516, 534; *Bull* v. *Odell*, 19 App. Div. 605; *Douglas* v. *Cruger*, 80 N. Y. 15; *Kilroy* v. *Wood*, 42 Hun, 636; *Bunnell* v. *Gardner*, 4 App. Div. 321.)  Mrs. Hotchkiss could not authorize the trustee to pledge the stock. (*Suarez* v. *De Montigny*, 12 Misc. Rep. 259, 266; 1 App. Div. 494; 153 N. Y. 678.)  The court had power to remove Hotchkiss as trustee and appoint the defendant Tuttle in his stead.  (Story on Conflict of Laws [8th ed.], 731, 732, note b; *Penn* v. *Lord Baltimore*, 1 Ves. 444, 454; *Shattuck* v. *Cassidy*, 3 Edw. Ch. 152; *Newton* v. *Bronson*, 13 N. Y. 587; *May* v. *May*, 167 U. S. 310, 320; *Losey* v. *Stanley*, 83 Hun, 420, 423; *People* v. *Norton*, 9 N. Y. 176, 178; *Jones* v. *Jones*, 30 N. Y. Supp. 177; 8 Misc. Rep. 660, 661, 676; *Butler* v. *State Mut. Life Assur. Co.*, 55 Hun, 296, 302; 125 N. Y. 769.)  The appointment of Tuttle as trustee cannot be here attacked.  (Code Civ. Pro. §§ 647, 649, 650; 1 Perry on Trusts [4th ed.], §§ 275, 277; *McKim* v. *Doane*, 137 Mass. 195; *People* v. *Norton*, 9 N. Y. 176, 178; *Curtis* v. *Smith*, 60 Barb. 9; *People ex rel.* v. *Donohue*, 70 Hun, 317, 325; *Losey* v. *Stanley*, 83 Hun, 420; *Mulry* v. *Mulry*, 89 Hun, 531, 539, 540.)  The trustee is entitled to recover. (*Stokes* v. *Amerman*, 55 Hun, 179.)  The law of the state should decide the case.  (Story on Conflict of Laws [8th ed.], §§ 64, 326; *Rice* v. *Harbeson*, 63 N. Y. 493, 503; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424, 434; *Cross* v. *U. S. Trust Co.*, 131 N. Y. 330, 345, 346; *Monroe* v. *Douglass*, 5 N. Y. 447; *Savage* v. *O'Neil*, 44 N. Y. 298; *McBride* v. *Farmers' Bank*, 26 N. Y. 450, 457.)  The alienation of the income of the trust is against the policy of the state.  (1 R. S. 730, § 63; Story on Conflict of Laws [8th ed.], §§ 23, 33, 326 and 327, p. 472; *Rice* v. *Harbeson*, 63 N. Y. 493, 502.)  In equity the plaintiff should bear the loss.  (*Spencer* v. *Shaw*, 100 Mass. 382, 390; *Budd* v. *Munroe*, 18 Hun, 316; *Gerard* v. *McCormick*, 130 N. Y. 261; *Suarez* v. *De Montigny*, 1 App. Div. 494.)  Plaintiff was properly charged with costs.  (*Herrington* v. *Robertson*, 71 N. Y. 280, 284;

*Church* v. *Kidd*, 3 Hun, 254, 271; Code Civ. Pro. § 3230; *Livingston* v. *Byrne*, 11 Johns. 555, 566; *Taylor* v. *Root*, 48 N. Y. 687; *Van Gelder* v. *Van Gelder*, 84 N. Y. 658.)

*W. C. Beecher* for National Broadway Bank, respondent. The word "trustee," appearing upon the body of the stock, was notice to the plaintiff that it was trust property and that it could not deal with it to the exclusion of the beneficiaries under the trust. (*Shaw* v. *Spencer*, 100 Mass. 382; *Loring* v. *Brodie*, 134 Mass. 453; *Gerard* v. *McCormick*, 130 N. Y. 261.) The allowance of costs to the Broadway Bank was a proper exercise of discretion. (*Budd* v. *Munroe*, 18 Hun, 316–318.)

GRAY, J.    Upon these facts, which are undisputed, the courts below have held that Tuttle was entitled to the possession and transfer of the stock and to the accrued dividends thereon. The conclusion as to the title to the property was reached upon the theory that, as the plaintiff received the stock with constructive notice that it was the subject of a trust, no title was acquired thereto, which it could enforce; for the pledge was contrary to the terms of the trust. I think that, so far, we should agree in the decision of the learned justices below.

It is clear enough, upon the facts proved, that the transaction with the plaintiff was for the benefit of Hotchkiss & Co.; whose business Philo P. Hotchkiss, the trustee, was conducting for his wife as the sole member of the firm. It was a loan, or an advance, of moneys to that concern upon its note, secured by a pledge of the trust stock, among other things. It is not a material circumstance that the moneys were in fact paid to the Home Insurance Company, and not to Philo P. Hotchkiss, the trustee, or to the firm of Hotchkiss & Co. They were so paid, in order that Hotchkiss & Co. might pay and take up their former note, which had been given upon the Home Insurance Company's loan to them, and to release the collateral securities. Despite the circuity of payment, it was none the less a loan, or an advance, of moneys to Hotchkiss & Co.

I do not understand the appellant as disputing the general rule, which imposes upon a party dealing with a trustee, in respect of the estate in his hands, the duty of inquiry as to the character of the trust, and a consequent responsibility for the property received, if it turns out that a reasonable inquiry would have disclosed that the property had been transferred in violation of the duty or power of the trustee. Nor does the appellant appear to dispute that the presence of the word "trustee" upon the stock certificate was, of itself, notice of the character of the property and sufficient to put the plaintiff upon inquiry as to Hotchkiss' authority to pledge it. The argument is that this is not a case where the appellant can be held under the doctrine of a constructive notice of the terms of the trust created by Imlay's deed and it is, in effect, argued that, as there was an absence of gross negligence in the plaintiff, in that its duty of inquiry was performed in the way that an ordinarily prudent and careful man would pursue in his own affairs, the rule in this class of cases was satisfied. In support of this contention, it is urged that the facts disclose that the trustee was not dealing with the trust property for his own benefit; that the moneys were paid to a third party, whose relations were with Hotchkiss as trustee, and that, as the securities did not suggest an inquiry into the deed of trust, inquiry short of that would show that the securities were, apparently, the property only of Georgiana herself, which she had competently authorized her husband, as trustee for her, to dispose of in this way. My consideration of this case does not lead me to the opinion that the argument is effective. Hotchkiss was not examined as a witness and the plaintiff's president, who conducted the transaction with him, was dead, so that their evidence is lacking to show what inquiry was made, or what the extent of information disclosed, at the time. The court, therefore, is more or less remitted to the presumptions, which arise from the known facts of the transaction and which it is bound to entertain in view of the settled rule of law.

Any person, who receives property, knowing that it is the

subject of a trust and that it has been transferred in violation of the duty or power of the trustee, takes it subject to the right, not only of the *cestui que trust,* but also of the trustee, to reclaim possession of the property.   Knowledge of the trustee's violation of the trust conditions will be chargeable to the person dealing with him, if the facts were such as, in reason, to put him upon inquiry and to require him to make some investigation, as the result of which the true title and authority of the trustee might have been disclosed.   He will, then, be regarded as having constructive notice of the terms of the trust, whence the trustee derives his power to act. Reference may be had to the following text books and decisions, as showing the general rule under which those dealing with trustees are affected with notice of the terms of the trust. (1 Story Eq. Jur. sec. 400; 2 Perry on Trusts, sec. 831; *Acer* v. *Westcott,* 46 N. Y. 384; *Wetmore* v. *Porter,* 92 *ib.* 77; *Gerard* v. *McCormick,* 130 *ib.* 261; *Kirsch* v. *Tozier,* 143 *ib.* 390; *Anderson* v. *Blood,* 152 *ib.* 285; *Duncan* v. *Jaudon,* 15 Wall. 165; *Shaw* v. *Spencer,* 100 Mass. 382.)   In Story's Equity Jurisprudence, it is laid down that "a purchaser is * * * supposed to have knowledge of the instrument under which the party with whom he contracts, as executor, or trustee, or appointee, derives his power," and, quite lately, this court has affirmed that doctrine.   (*Suarez* v. *Montigny.* 1 App. Div. 494; affd. on opinion below, 153 N. Y. 678.)

Such an inquiry was called for, in this case, as was reasonably possible to the plaintiff, in order to discover what was the character of the trust impressed upon the property and if there was a right in the trustee to use it by way of pledge for a loan, or an advance, of moneys for the benefit of Hotchkiss & Co.   The proof shows that the Broadway Bank, whose stock was offered to be pledged, had transferred the title thereto to Hotchkiss as trustee, upon the requirements of an order of the Connecticut court; which appointed him as trustee in succession to a prior trustee.   This order referred to "the matter of the Imlay trust, dated January 17, 1857,"

and, also, to the will of Adams, wherein Hotchkiss' predecessor in the trust was appointed trustee in succession to Adams, " as provided in said trust deed." An examination of the petition for Hotchkiss' appointment and of Adams' will would, presumably, have disclosed further facts about the trust deed; but, as a muniment of his title and authority, it is to be presumed that Hotchkiss had it in his possession; or could have produced it, or an authenticated copy. Its examination would have shown that the only power which the trustee had to deal with the trust securities was to sell the same and invest the proceeds thereof in other good bank stocks " in his own name as trustee." It would have shown that Georgiana's interest in them was only that of a life beneficiary and that the principal of the trust belonged to her issue, in remainder, or, contingently, to others. Shall we say that the plaintiff's duty of inquiry terminated when it ascertained what authority the trustee had from Georgiana, the *cestui que trust*, and that it was not bound to ascertain the extent of the authority conferred by the trust instrument itself? I think that would be a dangerous precedent to establish and one as unsound in principle, as unsupported by authority. The very order directing the Broadway Bank to transfer the stock into Hotchkiss' hands as trustee, had it been examined, would have disclosed that Georgiana, who authorized the pledging of the stock, was described as " the only person directly interested in the trust " and that phraseology, by inference, suggested that there were others who might be interested in its conduct.

I cannot agree with the distinguished counsel, who has presented the case so ably for the appellant, in thinking that his client would have performed its reasonable duty in the matter of inquiry, if it had stopped at any step short of the inspection of the trust instrument itself and that it was warranted in accepting and acting upon the statements and declarations of the trustee and of Georgiana Hotchkiss, the *cestui que trust*, and in presuming from the order appointing Hotchkiss as trustee that she resumed in herself all the interests in the trust and was, in fact, the owner of the stock. I think, in

the absence of evidence of what was done, by way of inquiry, the court is bound to presume that the plaintiff went as far as there was a clue to lead it, which was, in its nature, such as to suggest to a person of ordinary prudence and care in business transactions, that proceeding further would settle any question of just what the trust authority was. Had the Broadway Bank been inquired of, the plaintiff would certainly have been put in the way of discovering the facts. I see nothing unreasonable in holding the plaintiff to such a rule of diligence, as would require the examination of the trust instrument, before it undertook to loan moneys upon trust property in behalf, or for the benefit, of any person. (See *Duncan* v. *Jaudon, supra,* at p. 175.) The burden was upon it to prove what inquiry was made and, failing that proof, the presumption should obtain that it was made up to the instrument of trust itself; an inspection of which would show that the trustee could not pledge the trust securities.

Lord Chancellor CRANWORTH observed, in *Ware* v. *Egmont* (31 Eng. L. & Eq. 89–97), that " the question, when it is sought to affect a purchaser with constructive notice is, not whether he had the means of obtaining, and might by prudent caution have obtained, the knowledge in question ; but whether the not obtaining it was an act of gross, or culpable negligence." Adopting that standard of duty, I think we may say of the plaintiff that it was culpably negligent, not to investigate the right of the trustee under the trust instrument to pledge property affected upon its face with notice of a trust.

Doubtless, the circumstances of each case must determine whether the person has acted prudently and cautiously. Whether he was constructively notified, in the transaction with the trustee, may depend upon how far those circumstances pointed out the path of inquiry.

On the face of this stock, the plaintiff's attention was called to the fact that it was dealing with a trustee and inquiry of the Broadway Bank would have produced the order appointing Hotchkiss trustee " in the matter of the Imlay trust, dated

January 17, 1857." It then became chargeable with the knowledge of such facts about the trustee's duty and power, as would have been revealed by such an inquiry as a prudent regard for the rights of others, if not for its own interest, would, naturally, dictate. That a knowledge of the limitations of the trustee's power of disposition would have, or should have, deterred the plaintiff from advancing moneys to a business concern upon a pledge of the stock is not to be doubted. That such knowledge was obtainable, if not through the trustee himself, then through other available means, is, also, clear. So that, as it seems to me, we have a case presented where, if the course had been pursued by the plaintiff, which was incumbent upon it, under the circumstances, it would have been informed of the trust conditions which forbade the trustee from pledging the property for a loan. The pledge was not for the benefit of the trust, on its face, and we may not presume that it was. But there was no power at all to pledge ; for such a power is not included in a power to sell and to reinvest. (*Albany F. Ins. Co.* v. *Bay*, 4 N. Y. 9–19.) Nor can any such intention be predicated upon the language of the trust instrument. To the contrary, it seems evident, from the disposition directed to be made of the proceeds of a sale, by their reinvestment, that the settlor of the trust did not intend that the trust securities should be pledged. The trustee took the legal title to the trust property on a trust which did not authorize him to pledge it. (*Cumming* v. *Williamson*, 1 Sandf. Ch. 17–25.)

So far as the appellant seeks to attack the title of Tuttle, the trustee appointed in succession to Hotchkiss, and his claim to the securities, I think we must agree with the view taken by the court below. Whatever may be argued respecting the validity of Tuttle's appointment as trustee, it is not open to the plaintiff to question it. The appointment is good until it is set aside in a proceeding for the purpose and may not be the subject of collateral attack. (*People* v. *Norton*, 9 N. Y. 176.)

If the plaintiff never acquired a good title to the trust prop-

erty and could not retain it against the claim of the *cestui que trust*, or the trustee, how is it in a position to complain of any invalidity in the appointment of the new trustee, as against a decree of the court directing the transfer of the property to him? Having no right to compel the transfer to it, certainly it has no interest in the question into whose possession it shall be decreed.

But I do not think we should affirm the judgment below, in so far as it denies the plaintiff's claim upon the life interest of Georgiana Hotchkiss in the dividends accumulated and to be declared upon the stock. The learned justices below have denied the claim upon the ground that her interest, as beneficiary of the trust, was inalienable under the Revised Statutes (1 R. S. 729, § 63). That would be perfectly true, if the trust could be regarded as governed by the laws of this state; but I am unable to so regard it. The trust was created in Connecticut, by a resident of that state, in favor of his children there. Adams, the trustee named in the deed of trust, was domiciled in Connecticut and by his will, probated there, he appointed his successor in the trust as directed by the deed. Hotchkiss was appointed trustee, in further succession, by an order of a court of that state. The transaction of loan by the plaintiff, itself, was in New Jersey. Under these circumstances, I do not see how the questions relating to the interests of the beneficiary in the trust are to be dealt with according to the provisions of our statutes. What the law of the state of Connecticut may be concerning them, as affected by any legislative enactments, we are not informed by the proofs in the case. Section 63 of our Revised Statutes (1 R. S. 730) effected a change in the common-law rule, which permitted the alienation of their interests by *cestuis que trustent*, and, in the absence of proof upon the subject, we may not indulge in the presumption that the prohibitory provisions of our statutes have been enacted in Connecticut. (*Leonard* v. *Navigation Co.*, 84 N. Y. 48; *Vanderpoel* v. *Gorman*, 140 *ib.* 563.) It is to be presumed that the common-law rules, in equity, still obtain there. Under the com-

mon law, a wife had complete capacity to dispose of her sep-
arate estate and, if she was the beneficiary of a trust, she was
capable of charging her equitable interest, to the extent that
it was not inconsistent with the terms of the trust instrument.
(*L'Amoureux* v. *Van Rensselaer*, 1 Barb. Ch. 34–37 ; *Yale* v.
*Dederer*, 18 N. Y. 265 ; *Dyett* v. *Trust Co.*, 140 *ib.* 54–65.)
By this deed of trust, the settlor's only apparent intention, as
to his daughters' enjoyment and disposition of their interests,
is that they should have the sole and separate use, free from
their husbands' control or interference.   When the plaintiff
made the loan of money upon the note of Hotchkiss & Co., it
was upon a written authorization of Georgiana Hotchkiss to
her husband that he might " borrow " on certain named
stocks " standing in his name as trustee for my benefit and
owned by me."   She was the person dealing under the firm
name of Hotchkiss & Co. and had filed her certificate to that
effect, as required by the laws of the state.   Thus, we have a
transaction entered into by the plaintiff, presumably, in reli-
ance upon the representations of Georgiana, the beneficiary,
and for the benefit of a business concern, which was legally
hers.   I think she is estopped by her acts from setting up any
claim to the income upon the stock, received and which may
be hereafter, during her life, received by way of dividends,
by the trustee.   If this were not so, then the court would be
aiding her in the perpetration of a fraud upon the plaintiff.
That the writing signed by her, and upon which the plaintiff's
officers acted in dealing with Hotchkiss, was a disposition, or
pledge, by his wife and beneficiary, of her separate interest in
the trust, I entertain no doubt and to hold otherwise would be
highly inequitable.   I am not without some hesitation upon
this phase of the case; because I am mindful of the policy
of the state, as declared in the enactment of a statutory
provision, so beneficent and protective in its character, as
section 63 ; but I cannot regard this case as one which comes
within the sphere of any state policy.   I look upon the
question as simply one of a trust created in, and governed by
the laws of, a foreign state, as presumed, if not proved, and

60

nothing appears to prevent our giving effect to the act of Georgiana Hotchkiss, the beneficiary, in disposing as she did of her interest. The conclusion I reach, therefore, is that this judgment should be modified, so that it shall adjudge that the dividends upon the stock in question, accumulated and to be declared, shall be paid to the plaintiff, during the lifetime of Georgiana I. Hotchkiss, and, as so modified, the judgment should be affirmed ; without costs of this appeal to any party, save to the defendant Broadway Bank, to be paid out of the fund.

O'Brien, Bartlett and Haight, JJ., concur; Parker, Ch. J., Martin and Vann, JJ., dissent.

Judgment modified.