BENJAMIN L. LUDINGTON and CHARLES H. POND, as Substituted Trustees under the Last Will and Testament of ROBERT BARK-LEY, Deceased, Appellants, *v.* THE MERCANTILE NATIONAL BANK OF THE CITY OF NEW YORK and THE NATIONAL BROADWAY BANK OF NEW YORK, Respondents.

*Trust — when a substituted trustee may sue to set aside a transfer of bank stock made by him in violation of the will creating the trust and the orders appointing him — the bank issuing the certificate is a proper party — duty of one buying property from a trustee to ascertain his powers.*

Where the substituted trustees under a will, in violation of the limitations imposed upon their powers and authority by the will and by the orders of the Supreme Court appointing them, exchange a certificate of stock in one bank, which constituted part of the principal of the trust estate, for a certificate of stock in another bank under such circumstances as to charge both the banks with constructive knowledge that the transaction was in violation of the powers of the trustees, such trustees may maintain an action to recover the possession of the certificate so transferred by them against the bank to which it was transferred.

The bank issuing the certificate so transferred by the trustees is a proper party to such an action, where it appears that the interests of such bank will be directly affected if the trustees succeed in enforcing their equitable demand against the other bank.

When the complaint in such an action brought by the trustees against both the banks is not demurrable as to either of the defendants, considered.

A person purchasing trust securities from a trustee is bound to look into the instrument creating the trust for the purpose of ascertaining the power of the trustee.

APPEAL by the plaintiffs, Benjamin L. Ludington and another, as substituted trustees under the last will and testament of Robert Barkley, deceased, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 27th day of April, 1904, upon the decision of the court, rendered after a trial at the Westchester Special Term, sustaining the defendants' demurrers to the plaintiffs' complaint, and dismissing the said complaint.

The complaint is as follows:

"*First.* Upon information and belief that in the year 1871, at the City of New York, one Robert Barkley died, leaving a last will and testament which was duly admitted to probate by the Surrogate of the County of New York. That in and by said last will and testament, William Barkley, Robert De Witt Barkley and John F.

Barkley were named as executors and trustees thereof; that William Barkley and Robert De Witt Barkley duly qualified as such, and that said John F. Barkley duly renounced all rights to serve as such executor and trustee. That said William Barkley and Robert De Witt Barkley subsequently died, and that thereafter one John T. Martin was duly appointed a trustee of the said estate.

"*Second.* That heretofore and on or about December 29, 1880, the plaintiff Benjamin L. Ludington was, upon proceedings in the Supreme Court, New York County, duly appointed a trustee of the estate of Robert Barkley, deceased, to serve with the said John T. Martin, and duly qualified as such trustee. That thereafter said John T. Martin died.

"*Third.* That heretofore and on or about June 15, 1901, the plaintiff Charles H. Pond was, upon proceedings in the Supreme Court, New York County, duly appointed a trustee of said estate to serve with the said Benjamin L. Ludington, and duly qualified as such. That the plaintiffs have served as such trustees since their several appointments aforesaid, and are now acting as such.

"*Fourth.* That in and by the second paragraph of said last will and testament of Robert Barkley, deceased, the powers of the executors and trustees were defined as follows:

"'*Second.* I hereby give, devise and bequeath to my said executors, survivors and survivor of them, the estate, both real and personal, of which I shall die seized or possessed, or to which I may be entitled at the time of my death, and wheresoever* I may be entitled at the time of my death, and wheresoever the same may be situated; to have and to hold the same to them and their successors upon the uses and trusts hereinafter created, specified; and I hereby fully authorize, empower and direct my said executors, trustees, whenever by them it shall be deemed necessary or advisable for the execution of the provisions of this my last will and testament, to do and perform all things meet and proper with the property by them held in trust, as aforesaid, either to improve, lease, mortgage or sell the same or any portion thereof, and either at public auction or private sale, to sell and dispose of said portions of my estate both real and personal or either upon such terms and conditions as in their judgment shall be deemed proper and requisite, and thereupon

---

* *Sic.*

to execute, acknowledge and deliver good and sufficient deeds, conveyances, mortgages, bills of sale, and other instruments in the premises necessary and proper.'

"*Fifth.* That in and by the said orders appointing the plaintiffs trustees of the estate of Robert Barkley, deceased, as aforesaid, each was appointed a trustee under the will of Robert Barkley, deceased, with all the powers and authority given by said will to the trustees therein named excepting that the said trustee* hereby appointed shall have no power or authority to bargain, sell, alienate or in any manner to dispose of any part of the principal of the real or personal property of said estate without having first obtained leave of this court and not until he shall have given such security for the due and proper appropriation of the proceeds of any sale to be made as this court may upon such future application direct and require.

"*Sixth.* Upon information and belief that the defendant National Broadway Bank is a corporation created by, and organized under the laws of the United States of America to do business as a national bank under such laws, in the City, County and State of New York, and is now in liquidation under the provisions of sections 5220 and 5221 of the Revised Statutes of the United States.

"*Seventh.* Upon information and belief that the defendant Mercantile National Bank of the City of New York is a corporation created by, organized under, and doing business as a national bank under the laws of the United States of America in the City, County and State of New York.

"*Eighth.* That in and by said last will and testament of Robert Barkley, deceased, the executors and trustees thereof were authorized and empowered to divide the net annual income of the rest, residue and remainder of the estate, share and share alike, between the wife of the testator, now deceased, and the children of the testator during the lifetime of two of the testator's children, to wit, Jane Amelia Barkley, now Jane Amelia Martin, widow of John T. Martin, deceased, and Robert De Witt Barkley, or the survivor, and in the event of the death of any of the testator's children, the issue of the child or children so dying, to take the share of the parent; that upon the death of both Jane Amelia Barkley and Robert De Witt Barkley, the principal of the estate should be

---

* *Sic.*

divided share and share alike between the children of the said testator, surviving, or, in the event of the death of any child of the testator, among its issue. That the said testator left him surviving, his wife, Mary A. Barkley, now deceased, and the following children, to wit, William Barkley, Martha Savena, now Martha Mead, wife of Henry D. Mead; Marietta, now Marietta Ludington, wife of Benjamin L. Ludington; Jane A. Barkley, now Jane A. Martin; and Robert De Witt Barkley. That said William Barkley died prior to the commencement of this action, leaving only issue him surviving Charles B. Barkley. That Robert De Witt Barkley died prior to the commencement of this action, leaving no issue him surviving. That Martha S. Mead, Jane A. Martin, Marietta Ludington and Charles B. Barkley are all of the beneficiaries of the estate of said Robert Barkley, deceased, now living, and all of the persons in existence at the present time, who are entitled to any interest therein, and all are of full age. That said Jane Amelia Barkley, now Martin, is still living.

" *Ninth.* That among the assets of the estate of said Robert Barkley, deceased, held by the plaintiffs as trustees as aforesaid, on or about April 21, 1903, and forming a part of the residuary estate of the said decedent, and out of which the aforesaid beneficiaries received and would receive a portion of the net income, were 200 shares of the capital stock of the defendant National Broadway Bank of New York, of the par value of $25 per share, and worth at that time, to wit, on or about April 21, 1903, the sum of about $15,000 in the open market. That dividends upon said stock, for some time prior to the said April 21, 1903, had been declared and paid thereon at the rate of 12 per cent per annum.

" *Tenth.* Upon information and belief that on or about said April 21, 1903, the defendant National Broadway Bank went into liquidation, pursuant to the provisions of sections 5220 and 5221 of the Revised Statutes of the United States, and duly sold, assigned, transferred and delivered to the defendant Mercantile National Bank all of its assets of every nature and description whatsoever, for and in consideration of the sum of $3,000,000 in cash, paid or to be paid by the said defendant Mercantile National Bank to the defendant National Broadway Bank, and the assumption and payment by the defendant Mercantile National Bank of the liabilities

of the defendant National Broadway Bank. That it was further provided and agreed between the defendants herein that shareholders of record of the defendant National Broadway Bank, upon the closing of the transfer books, to and including April 14, 1903, should have the right to subscribe *pro rata* for one share of the increased capital stock of the defendant Mercantile National Bank, of the par value of $100 for each four shares of the capital stock of the defendant National Broadway Bank of the par value of $25 each, at the price of $300 per share, payable simultaneously with the consummation of the aforesaid purchase of the assets and business of the defendant Broadway National Bank. That it was further provided that the president of the defendant National Broadway Bank should act as the agent and attorney for each and every shareholder of the defendant National Broadway Bank, who should subscribe for such increased capital stock of the defendant Mercantile National Bank, to receive the said subscriptions, and the distributive share of the proceeds of the sale of the assets and business of the defendant National Broadway Bank, on behalf of such subscribing shareholders, and to apply the same to the payment of the aforesaid subscriptions for stock to the defendant Mercantile National Bank. That these plaintiffs, as trustees of the estate of Robert Barkley, deceased, did thereupon, and pursuant to said offer and privilege, subscribe for 50 shares of the capital stock of the said defendant Mercantile National Bank, and did authorize and empower said officer of the defendant National Broadway Bank to apply the *pro rata* share due to estate of Robert Barkley, deceased, on the sale of the assets and business of the defendant National Broadway Bank, to wit, the sum of $15,000 to the purchase of said 50 shares of stock of the defendant Mercantile National Bank, and did thereupon endorse as such trustees, and deliver and surrender up, to the defendant Mercantile National Bank, the certificates for 200 shares in the defendant National Broadway Bank, belonging to, and standing in the name of, the estate of Robert Barkley, deceased, as aforesaid, and thereupon received from the defendant Mercantile National Bank a certificate for 50 shares of the capital stock of the said defendant Mercantile National Bank, in the name of the estate of Robert Barkley, deceased, and the plaintiffs now hold the same.

"*Eleventh.* Upon information and belief that the capital stock

of the defendant National Broadway Bank of New York, was, at the time of such transfer as aforesaid, of the value in open market of $15,000, or thereabouts, and that for some time previous thereto, and up to the time of such transfer, dividends upon said stock had been declared and paid at the rate of 12 per cent. per annum.

"*Twelfth.* Upon information and belief that the capital stock of the defendant Mercantile National Bank is worth in the open market very much less than $15,000, to wit, the sum of $11,500 only, and that dividends thereon have been declared at the rate of 8 per cent. only, and said stock will, in all probability, further decrease in market value and in the rate of dividends. That since the receipt of the said stock from the defendant Mercantile National Bank, and up to the time of the commencement of this action, the said defendant Mercantile National Bank has declared and paid to the plaintiffs herein, as such trustees, two dividends of $200 each.

"*Thirteenth.* On information and belief that heretofore and before the commencement of this action, the said 50 shares of the capital stock of the defendant Mercantile National Bank, together with the said two dividends amounting to $400, and $6 interest thereon, to date, amounting in all to the sum of $406, were duly tendered to the defendant Mercantile National Bank with the request that the same be accepted and that the said defendant deliver up to the plaintiffs herein the aforesaid 200 shares of the stock of the defendant National Broadway Bank, so received as aforesaid from the plaintiffs herein, but that the said defendant Mercantile National Bank refused to accept the said tender or deliver up the stock, as aforesaid.

"*Fourteenth.* Upon information and belief that none of the aforesaid beneficiaries or *cestuis que trustent* had any knowledge of the aforesaid transaction, until long after its consummation, and that none of them have ratified, confirmed, or in any manner approved the acts of the plaintiffs herein, but, on the contrary, have duly demanded in writing, of these plaintiffs, that they take proceedings to recover back the said stock in the defendant National Broadway Bank, and that this action is brought pursuant to such requests. That there is no adequate remedy at law.

"*Fifteenth.* That these plaintiffs in making the transfer and sale of stock as aforesaid, acted in good faith, believing that the

said transfer or sale was for the best interest of the estate of Robert Barkley, deceased, and were free from any wrongful intent or design in said transaction.

" *Wherefore* these plaintiffs pray the decree of this court directing the delivery to them, as trustees of the estate of Robert Barkley, deceased, by the defendants herein, or the one in whose possession the stock now is, of the said 200 shares of the capital stock of the defendant Broadway National Bank, heretofore delivered by the plaintiffs to the Mercantile National Bank, upon the surrender up by these plaintiffs of the aforesaid 50 shares of the stock of the defendant Mercantile National Bank, together with the sum of $406 dividends and interest thereon, upon said stock, heretofore paid and received by the plaintiffs, and for such other and further relief in the premises, as may be just and equitable."

Each of the defendants demurred to this complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrers were sustained at the Special Term, and upon the decision there rendered final judgment was entered dismissing the complaint. From this judgment the plaintiffs have appealed.

*Henry G. K. Heath,* for the appellants.

*E. H. Sykes* [ *William V. Rowe* with him on the brief], for the respondents.

WILLARD BARTLETT, J.:

The plaintiffs in this action, as substituted trustees under the will of Robert Barkley, deceased, seek to recover 200 shares of the capital stock of the National Broadway Bank, transferred by them to the Mercantile National Bank, in violation of the terms of the will and of the orders of the Supreme Court under which they were appointed to succeed the original trustees. These orders provided that the substituted trustees should have no power or authority to bargain, sell, alienate or in any manner dispose of any part of the principal of the real or personal property of the estate without having first obtained leave of the court, nor until they should have given such security for the due and proper proportion of the proceeds of any sale as the court might thereafter direct and require. The transfer of the National Broadway Bank stock to the Mercantile National Bank was made by the indorsement of the certificates by the plaintiffs as

such trustees, and in return therefor the plaintiffs received from the Mercantile National Bank a certificate for fifty shares of the capital stock of that corporation in the name of the estate of Robert Barkley, deceased.  The circumstances of the transfer as set out in the complaint were such as to charge the defendants with knowledge of the limitations imposed by the will and the orders of the Supreme Court upon the powers and authority of the plaintiffs as trustees. " Knowledge of the trustee's violation of the trust conditions will be chargeable to the person dealing with him, if the facts were such as, in reason, to put him upon inquiry and to require him to make some investigation, as the result of which the true title and authority of the trustee might have been disclosed.  He will then be regarded as having constructive notice of the terms of the trust, whence the trustee derives his power to act." (*First National Bank* v. *National Broadway Bank*, 156 N. Y. 459, 468.)  A person who takes trust property with such constructive notice takes it subject to the right of the trustee to reclaim possession thereof. The obligation of a party who deals with a trustee in the purchase from him of trust securities to look into the trust agreement to ascertain the power of the trustee, was distinctly asserted in the clearest language by the Appellate Division in the first department in the case of *Suarez* v. *De Montigny* (1 App. Div. 494), and the judgment therein rendered was affirmed upon the opinion below by the Court of Appeals (153 N. Y. 678).  It seems to me that under these authorities the complaint clearly states a cause of action against the Mercantile National Bank, and that the National Broadway Bank is a proper party because its interests will be directly affected if the plaintiffs succeed in enforcing their equitable demand against the Mercantile National Bank.

I think the judgment should be reversed and that the plaintiffs should have an interlocutory judgment overruling the demurrers, but providing that the defendants have leave to answer over.

JENKS, RICH and MILLER, JJ., concurred; HOOKER, J., not voting.

Final judgment reversed, with costs, and interlocutory judgment directed overruling the demurrer, with costs, with leave to the defendants to answer over upon payment of costs.