## THE PERTH AMBOY MANUFACTURING CO. v. CONDIT & BOWLES.

1. In case of limited or special partnership under the act of 1837 (*Elm. Dig.* 376), the alteration caused by the death of a special partner, affects only transactions carried on after such alteration, and does not affect prior debts or other transactions of the firm.

2. Suits brought by the firm after the death of a special partner, for debts which seemed prior to such alteration, are properly brought in the name of the general partners.

3. Goods being sold and credit given to agent, the fact of agency being unknown to the vendors at the time of sale : when the agency is disclosed, the vendors may elect which they will hold responsible, the principal or agent.

4. The principal may be held liable, although he instructed the agent to purchase in his own name, the vendors being ignorant of the special instructions.

5. Although motion to nonsuit be improperly refused, yet if the defect in the evidence be subsequently supplied, the judgment will not be reversed.

6. The construction of written instruments is for the court, and not for the jury.

7. No notice will be taken of alleged errors not founded on the precise exceptions shewn by the bill. (a)

On writ of Error to the Supreme Court. ·

This was an action brought in the Supreme Court by Condit & Bowles in their own names, against the Perth Amboy Manufacturing Company, for goods sold to the Company by a firm organized as a limited partnership, in which they were the general partners. The goods were purchased by C. F. Maurice in his own name, but the plaintiffs below contended that they were bought for the use of the company, of which they alleged that C. F. Maurice was the agent; upon the trial, under the charge of the court, the jury rendered a verdict for the plaintiffs below. To the ruling and charge of the Circuit Judge on the trial, the defendants excepted, and on these exceptions errors were assigned. The facts and exceptions sufficiently appear in the opinion delivered by Justice CARPENTER.

The cause was argued by *O. S. Halsted* and *J. S. Green*, for plaintiffs in error, and by *C. Parker* and *A. Whitehead*, for defendants in error.

CARPENTER, J. It is assigned for error that the judge on the trial refused to nonsuit the plaintiffs for certain reasons alleged, which I will notice in the order presented by counsel.

The first relates to the form of the action. The partnership of the plaintiffs below was shewn to be one formed under the statute in relation to limited or special partnerships. *Act Feb. 9*, 1837 (*Elm. Dig. 376*), under the name of *Condit & Bowles*, the two general partners. One of the special partners, James Vanderpool, having died in the latter part of the winter of 1843, his son Beach Vanderpool, in whom his interest had vested, took his place. It was urged, that by the 12th section of the act, every alteration *made* in the *name of the partners*, in the nature of the business, or in the capital or shares thereof, or in any other matter specified in the original certificate, causes a disso-

_____

(a) See *Oliver* v. *Phelps*, Spenc. 181, and *ante* 609; *Potts* v. *Clark*, Spenc. 636; *Moran* v. *Green*, *ante* 566.

lution of the partnership. That this was such alteration contemplated and provided for in that section, and that by the provisions of the same section, the partnership, being carried on after such alteration, became a general partnership, and subject to the general doctrine regulating such partnership. That having become by such alteration general, the names of all the parties surviving must necessarily be used in all suits brought by the firm ; at any rate that the action should have been brought by Condit & Bowles, as surviving partners. Without expressing any opinion as to the correctness of this construction of the act, and whether the death of one of several special partners will operate as a dissolution ; it is a sufficient answer to say, that the liability of the defendant below (if any) accrued before such death occurred. On any such alteration as is specified by the section of the act cited, it is the partnership carried on after such alteration shall have been made, that is to be deemed a general partnership, unless renewed as a special partnership, according to the provisions of a preceding section. The 12th section therefore does not apply to prior debts or other transactions of the firm. Suit brought by the firm, for prior debts, must, by the very terms of the statute, be brought in the name of the general partners. The action therefore was rightly brought.

But it is said, that the plaintiffs below should have been non-suited, because, as alleged, the agency of C. F. Maurice was not proved, and because the goods were sold and the credit was exclusively given to him, and not to the company. But it is immaterial that the goods were so sold and the credit exclusively given to Maurice ; if he was the agent of the company and the goods in fact were purchased for it and applied to its use ; and if the fact of this agency at the time of the sale was unknown to the vendors. It appears in evidence, and it is a fact settled by the jury, that the fact of agency was unknown at the time of the sale. By the well settled rule, the vendors were not compelled to look to the agent only, but on the discovery of the principal, had the right to elect which, the principal or the agent, they would hold responsible. The enun-

ciation of this rule anticipates one alleged ground of error, assigned upon the judge's charge.

As to the proof of the agency, it will be sufficient to allude to the evidence before the jury. Maurice himself, a competent witness, testifies expressly to the fact of being the agent of the company, and that the castings were purchased by him of the plaintiffs and applied to the use of the company. That he was employed as agent of the company for the purpose of conducting the factory, by Andrews its recognized general agent. That in pursuance of this appointment he purchased materials for its use, (but in his own name) employed workmen, and conducted *the* factory of the company. There was evidence that he was appointed and styled the manufacturing agent of the company ; and he referred to an appointment or memorandum in writing, though not signed, which contained the terms of his engagement with the company, and a specification of his duties. Letters were produced and made exhibits in the cause, in which he is addressed by the officers of the company as manufacturing agent, and special directions from time to time given him, as to the performance of particular duties. An extract from the by-laws of the company was made an exhibit on the trial, and is produced before us, authorizing the general agent, (Doctor Andrews,) to employ a sub-agent or manufacturing agent to conduct the manufactory to be established, and to make the necessary contracts with such sub-agent. This testimony, delivered at the trial, certainly was sufficient to go before the jury in order to shew the agency of Maurice, and the judge rightly refused to nonsuit.

It is true when the nonsuit was demanded, the paper referred to by Maurice had not then been offered in evidence, but it is not admitted that there was no such evidence of agency, independent of that writing as entitled the plaintiffs to go before the jury. It has already been referred to cursorily. But even if the nonsuit was then improperly refused, yet if the supposed defect in the evidence was subsequently supplied by the production of that writing, (and it was so, as appears by the bill of exceptions,) the court will not reverse.

But error has been assigned upon the judge's charge. Under

the established rule of practice, no notice will be taken of any alleged error, not founded on the precise exceptions shewn by the bill.

1. So far as the exceptions apply to the exposition of the law of principal and agent, and of the liability of the principal, they have been already disposed of by remarks previously made. Assuming that Maurice was the agent of the company for the purchase of materials, that he did purchase for the company, and that the articles were applied to its use: the company was liable although the agent might have been instructed to purchase in his own name, the vendor being ignorant of the special instructions.

2. The exception that the judge charged the jury that whilst they (the jury) might say how far they would believe Mr. Maurice's statement; but that it was only for the court to say whether the written instrument produced constituted him a principal or agent, I take to shew no error. There is nothing better settled than that the construction of written instruments is for the court and not for the jury.

3. But the chief question raised upon the charge of the Chief Justice is, as to the construction by him of the appointment, whether on that instrument he appeared as an agent only; or whether, subject to the conditions imposed, he conducted the operations of the company at his own risk and for his own benefit. I have carefully examined the instrument in its terms, and as aided by the light of surrounding circumstances, and while there are terms which are singular and dubious, yet upon the whole, I have come to the same conclusion as the judge who tried the cause. The appointment was made by Andrews, but undoubtedly, if agent at all, Maurice was the agent of the company, and not of Andrews, by whom he was appointed.

The instrument purports to be, not an agreement between Maurice and the company or its general agent, but an *appointment*. It is addressed to all the world:—"Know all men by these presents," &c. "appoint," &c. He receives directions; he makes no agreement.

He is to be known as the manufacturing agent of the company, to perform duties and to receive compensation, graduated

it is true upon the amount of locks delivered, but never to exceed the sum of $1,000 ; a provision utterly inconsistent with the idea of manufacturing at his own risk and for his own benefit.     He does everything under superintendence, reporting once a month to the general agent, the operations of the factory ; to whom also he is to deliver 'all bills of an amount over $50, remaining unpaid.

There is certainly a provision somewhat difficult to understand, by which the price of defective locks is to be deducted from his compensation ; still, upon the whole instrument, I have come to the conclusion that Maurice was merely the agent of the company.     I conclude that he purchased for it and for its benefit, and that the same result is reached, either with or without the interlineation repudiated by Mr. Maurice as not in the copy shewn to him—" that all purchases of materials, &c. should be made by him in his own name, and not in the name of the company."     A principal cannot avoid his legal liabilities by directions to his agent to keep the purpose of his purchases a secret.     When the agency is disclosed, the vendor, who has sold in ignorance thereof, may then elect, whether he will resort to the agent or to the principal.

I hold that there is no error in the charge which has been pointed out by the exceptions taken.     Upon all the points taken, I am in favor of affirming the judgment.

*For Affirmance*—GREEN, (C. J.) NEVIUS, WHITEHEAD, CARPENTER, RANDOLPH, SPEER, PORTER, SPENCER, SCHENCK, ROBERTSON, and SINNICKSON—11.

*For Reversal*—The CHANCELLOR—1.

Judgment affirmed.

CITED *in D., L. & W. R. R. Co.* v. *Dailly,* 8 *Vr.* 529.