OIL & GAS VENTURES—FIRST 1958
FUND, LTD., Oil & Gas Ventures—Sec-
ond 1958 Fund, Ltd., and Oil & Gas Ven-
tures—First 1959 Fund, Ltd., Plaintiffs,

v.

Louis KUNG, also known as Ling Chieh
Kung, Defendant.

United States District Court
S. D. New York.

Jan. 19, 1966.

65 Civil 2921.

Feldman, Kramer, Bam & Nessen, New York City, for plaintiffs; Arthur B. Kramer, Michael O. Finkelstein, New York City, of counsel.

Theodore Charnas, New York City, for defendant; Stephen Charnas, New York City, of counsel.

WEINFELD, District Judge.

This is an action on behalf of three limited partnerships (hereafter called the Funds), engaged in exploiting oil and gas deposits, for an accounting and to recover moneys of which they allegedly were mulcted through a conspiracy engaged in by defendant Louis Kung and others, individuals and corporations, named as co-conspirators but not as defendants.

In broad terms, the complaint charges that Kung and the others conspired to cause the Funds to be organized and the investing public to purchase units therein; to arrange for each Fund to be managed by Oil & Gas Ventures, Inc., a Delaware corporation (hereafter called Ventures), as its sole general partner with authority to manage its affairs; and to gain control of the managing partner through Kung's agents and nominees, one of whom, Robert S. Carter, named as a co-conspirator, was designated as its president and, together with two other of Kung's nominees, constituted a majority of Ventures' board of directors. Plaintiffs further charge that Kung and his confederates, having thus gained control of Ventures, the managing partner, and through Ventures, of the Funds, caused the Funds to enter into a series of contracts, transactions and conveyances, principally with Cheyenne Oil Corporation (hereafter called Cheyenne), also named as a co-conspirator; that the purpose and effect of those transactions were to mulct and overreach the Funds in various ways; in short, that Cheyenne, also controlled by Kung, was the principal conduit through which the defendant achieved his purpose of defrauding the Funds.

The defendant has combined a series of motions, each of which will be considered separately.

### The motion under Rule 12 to dismiss for lack of jurisdiction.

Federal jurisdiction is based upon diversity of citizenship. Each plaintiff Fund was organized in New Jersey, with its principal place of business there. Ventures, which brings this action on behalf of the Funds, is a Delaware corporation, with its principal place of business in New Jersey. Kung is and has been a resident of Houston, Texas since 1962. Personal service of process was made upon him there pursuant to Rule 4(e) of the Federal Rules of Civil Procedure in accordance with New York's "long-arm" statute, CPLR, sections 302 and 313. Section 302 of that Act provides:

> "(a). *Acts which are the basis of jurisdiction.* A court may exercise personal jurisdiction over any non-domiciliary * * * as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:
>
> 1. transacts any business within the state; or
>
> 2. commits a tortious act within the state * * *."

■ Plaintiffs contend that upon the facts here presented personal jurisdiction is warranted under either subdivision of section 302, whereas defendant, contending to the contrary, moves to dismiss. The contours of the jurisdictional reach and limitation of New York's long-arm statute are set forth in Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,[1] upon which each party relies for support. The teaching of that case is that under the business or the tort clause the power to subject nondomiciliaries to in personam jurisdiction rests upon purposeful acts or conduct within the state by the defendant or his agent which give rise to the cause of action sufficient to satisfy the minimal contact test.[2] The issue in each case is one of fact which "var[ies] with the quality and nature of the defendant's activity * * *."[3]

■ While the court does not pass upon the verity or the merits of the expansive charges contained in the complaint (which in the absence of denial by the defendant are deemed admitted for the purposes of this motion),[4] they are supported by affidavits and documents. They indicate Kung's presence in this city, where he conceived the conspiracy and developed plans for its execution at a series of meetings attended by him, his co-conspirators and his attorneys. The final meeting leading to the organization of the Funds also took place here and was participated in by him and the same group. Thereafter followed various acts from September 1957 to February 6, 1960, which it is charged were the means by which the Funds were defrauded. These included depriving the Funds of their rightful business opportunities; diverting moneys from them; causing them to pay fees when no services were rendered, and to pay excessive fees for services rendered; receiving kickbacks out of excessive sums paid by the Funds to third parties; converting properties of the Funds and obtaining, without con-

1. 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

2. Id. at 452, 458, 467, 261 N.Y.S.2d 8, 209 N.E.2d 68. See also, United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir. 1966).

3. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 323 (2d Cir. 1964). See also, Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

4. Cf. Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 15 L.Ed.2d 39, 41 (Goldberg, Circuit Justice, 1965). Upon argument of this motion defense counsel stated the defendant's failure to file an affidavit controverting the allegations of the complaint and the supporting affidavits was to avoid a hearing on the jurisdictional attack. SM 73.

sideration, substantial interests in their oil-producing wells. Many of these transactions were authorized, approved or consummated at the office of Ventures in New York City at meetings or conferences attend by Kung, who either directly or through his agents issued orders to Carter for the execution of agreements between the Funds and Cheyenne, which served to siphon off moneys and properties of the Funds in furtherance of the conspiratorial objective.

The plaintiffs also charge that on other occasions during the same period from September 1957 to February 1960 Kung, and at times other conspirators acting under his direction, control and domination, repeatedly conferred with Carter at Ventures' offices in New York City from which he, Kung, and his other confederates corresponded and communicated by telephone with his agents and co-conspirators at Wichita Falls and Dallas, Texas, all for the purpose of carrying out the conspiratorial objective of despoiling the Funds. Finally, the plaintiffs make the flat assertion that during the aforesaid period Kung spent at least ten days of each month in New York City, engaging in the above-mentioned activities.

■ Significantly, although Kung submitted an affidavit as to his citizenship and residence, he has denied neither his frequent presence in New York City, nor the activities then attributed to him. The averments here presented establish not only that the conspiracy originated in this city and state, but also that

Kung's acts here in furtherance of its purpose to despoil the plaintiff Funds, however contrived, were persistent and regular, extending over a period of almost three years. The purposeful acts so ascribed to him and his agents [5] are more than sufficient to satisfy the test of minimal contacts within the state necessary to subject him to in personam jurisdiction. This is so whether the jurisdictional reach rests upon subdivision 1 or 2 of section 302(a) of New York's long-arm statute.[6] In the circumstances it is not unreasonable to require him to defend the suit which seeks to redress the alleged grievances.[7]

Jurisdiction is not defeated, as the defendant contends, by reason of the fact that the agreements which were ordered to be entered into or executed in New York City related to the acquisition and development of oil and gas properties located in Texas, or were to be performed there or in other states; or that deeds executed here by the plaintiff Funds conveyed title to properties in other states— all of which are claimed acts in furtherance of the purpose to enrich Kung at the expense of the Funds. In personam jurisdiction rests upon the many acts committed within this state by the defendant, which gave rise to the asserted cause of action.[8]

■ The defendant further contends that the failure to allege either that he was an officer or director of Ventures or the corporate conspirators, or that he was in a fiduciary relationship to the plaintiff Funds, precludes any ba-

---

5. Cf. United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir. 1966).

6. See Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 15 L.Ed.2d 39 (Goldberg, Circuit Justice, 1965); United States v. Montreal Trust Co., Docket No. 29607, 2d Cir., January 6, 1966, 358 F.2d 239; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y. S.2d 8, 209 N.E.2d 68 (1965); Lewis v. American Archives Ass'n, 43 Misc.2d 721, 252 N.Y.S.2d 217, 219 (Sup.Ct.1964); Iroquois Gas Corp. v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494, 497 (Sup.Ct.1964), aff'd, 23 A.D.2d 823, 258 N.Y.S.2d 376

(4th Dep't 1965). Cf. Bryant v. Finnish Nat'l Airline, 15 N.Y.2d 426, 260 N.Y.S. 2d 625, 208 N.E.2d 439 (1965).

7. Cf. Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 15 L.Ed.2d 39, 44 (Goldberg, Circuit Justice, 1965); Johnson v. Equitable Life Assur. Soc'y, 22 A.D.2d 138, 254 N.Y.S.2d 258 (1st Dep't 1964).

8. See Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 15 L.Ed.2d 39 (Goldberg, Circuit Justice, 1965); Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 320 (2d Cir. 1964); Simonson v. International Bank, 14 N.Y.2d 281, 288, 251 N.Y. S.2d 433, 200 N.E.2d 427 (1964).

sis for in personam jurisdiction. The answer to this contention is twofold. First, a fiduciary relationship may be grounded upon domination, which does not necessarily rest upon ownership of controlling stock of a corporation, nor upon official title or office.[9] Domination of a legal entity, whether its form be corporate or otherwise, is determined from all the facts, conduct and circumstances of a given situation.[10] It is the fact of control and not the particular means by which it is exercised which determines whether or not legal liability exists.[11] In the instant suit, domination and control are explicitly alleged. Second, it is not essential that one occupy a direct fiduciary relationship as a predicate to the imposition of liability based upon a claim of breach of duty. One who knowingly participates in or joins in an enterprise whereby a violation of a fiduciary obligation is effected is liable jointly and severally with the recreant fiduciary.[12] Even assuming Kung himself did not stand in a direct fiduciary relation to the plaintiffs, he is charged with having conspired knowingly with those who were their fiduciaries. The charge having been made, suit to enforce the claimed liability may properly be maintained in this court.

The motion to dismiss for lack of in personam jurisdiction is denied.

### The motion to dismiss for lack of proper venue.

Kung, who is a citizen of the Republic of China and has been a resident of Texas since January 1962, next seeks to dismiss for lack of proper venue.

Section 1391(d) of 28 U.S.C. in clear and unambiguous language provides that "an alien may be sued in any district." Thus, upon a literal reading of the section, venue in this district is proper. The defendant, however, argues that it cannot be construed in terms of its precise language, but must be read with the addition after "district" of the words "in which he can be served"—in sum, that the only proper venue in the instance of an alien is the district where physical personal service of process can be effected upon him, and since Kung was served in Texas, that is the only proper venue district.

The defendant's position is based upon a contention that prior to the Judicial Code revision of 1948, in the absence of any express statutory provision fixing venue in suits against aliens, the courts generally held that an alien could be sued only in the district in which he could be served.[13] The defendant argues

9. See Southern Pac. Co. v. Bogert, 250 U.S. 483, 491–92, 39 S.Ct. 533, 63 L.Ed. 1099 (1919); Gratz v. Claughton, 187 F.2d 46, 49–50 (2d Cir.), cert. denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1950). Cf. Blau v. Mission Corp., 212 F.2d 77, 80 (2d Cir.), cert. denied, 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138 (1954).

10. Austrian v. Williams, 103 F.Supp. 64, 73 (S.D.N.Y.), rev'd on other grounds, 198 F.2d 697 (2d Cir.), cert. denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952).

11. Southern Pac. Co. v. Bogert, 250 U.S. 483, 492, 39 S.Ct. 533, 63 L.Ed. 1099 (1919).

12. Jackson v. Smith, 254 U.S. 586, 589, 41 S.Ct. 200, 65 L.Ed. 418 (1921); Bankers Life & Cas. Co. v. Kirtley, 338 F.2d 1006, 1013 (8th Cir. 1964); Sexton v. Sword S.S. Line, Inc., 118 F.2d 708, 711 (2d Cir. 1941); Irving Trust Co. v. Deutsch,

73 F.2d 121, 125 (2d Cir. 1934), cert. denied, 294 U.S. 708–709, 55 S.Ct. 405, 79 L.Ed. 1243 (1935); Industrial Waxes, Inc. v. International Ry., 193 F.Supp. 783, 786 (S.D.N.Y.1961); Austrian v. Williams, 103 F.Supp. 64, 76 (S.D.N.Y.), rev'd on other grounds, 198 F.2d 697 (2d Cir.), cert. denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952); Broadcast Music, Inc. v. Taylor, 10 Misc.2d 9, 55 N.Y.S.2d 94, 103 (Sup.Ct.1945). Cf. Wendt v. Fischer, 243 N.Y. 439, 154 N.E. 303 (1926).

13. See Vaughan v. Empresas Hondurenas, 171 F.2d 46, 47–48 (5th Cir. 1948); Smithson v. Roneo, Ltd., 231 F. 349, 351 (E.D.N.Y.1916). See also, Niccum v. Northern Assur. Co., 17 F.2d 160, 164 (D. Ind.1927); Sandusky Foundry & Mach. Co. v. De Lavaud, 251 F. 631, 632 (N.D. Ohio 1918); H. G. Baker & Bro. v. Pinkham, 211 F. 728, 730 (E.D.S.C. 1914).

that section 1391(d) is a codification of, and was enacted to give effect to, previously existing case law, which forecloses a literal reading of the new section. In support he points to the Reviser's Notes which, without detailed discussion, state that the section was "added to give statutory recognition to the weight of authority concerning a rule of venue as to which there has been a sharp conflict of decisions." [14]

A reading of the pre-1948 cases relied upon by the defendant indicates that the courts, in the absence of a venue provision as to aliens, adopted an expansive rather than a restrictive venue policy with respect to suits involving aliens— generally, since an alien was not an "inhabitant" of any judicial district and was deemed without residence in the United States for venue purposes,[15] he was suable in any district where valid personal service of process could be effected. The rationale of those cases rested upon a concept of unrestricted venue, provided jurisdiction over the alien was obtained by personal service of process.[16] As Professor Moore observes, "most of the cases that enunciated the doctrine that an alien could be sued in the district where he was served were decided at a time when effective service of process was ordinarily limited to the district, and Rule 4(f) has changed this so that process runs statewide. In the light of this

and also because the policy of the venue statute is to facilitate suits against an alien, a literal construction of § 1391(d) is justifiable." [17]

▮ Whatever the merits of these respective positions, the simple fact is that the statutory language is clear and there is no need to refer to legislative history, which in this instance at best is dubious.[18] This court is of the view that section 1391(d) must be applied as it reads and, assuming in personam jurisdiction, venue is not defeated where valid out-of-district service can be effected upon an alien.[19] Any other construction would, with respect to aliens, sterilize the force of the recent state long-arm statutes, as well as the recent amendments to Rule 4 of the Federal Rules of Civil Procedure. It would grant a favored status to an alien nondomiciliary residing in the United States as against a citizen nondomiciliary; the former, under defendant's construction, would be called upon to respond to suit only in the district in which he could be served, usually his place of abode, whereas the latter would have to defend suit in a district removed from his residence. Moreover, it might well preclude suit against an alien who resided outside the United States, even though a cause of action existed against him based upon substantial contacts with a state.[20] This hardly

14. The Supreme Court has not always accepted the Reviser's comment that a particular statutory provision reflected a codification of existing law. For example, although the Reviser's Note states that 28 U.S.C. § 1404(a) "was drafted in accordance with the doctrine of forum non conveniens," the Supreme Court, in Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955), observed that the provision was intended as more than a codification of existing law.

15. See In re Hohorst, 150 U.S. 653, 660, 14 S.Ct. 221, 37 L.Ed. 1211 (1893).

16. See Barrow S.S. Co. v. Kane, 170 U.S. 100, 112, 18 S.Ct. 526, 42 L.Ed. 964 (1898); Galveston, H. & S. A. Ry. v. Gonzales, 151 U.S. 496, 503, 14 S.Ct. 401, 38 L.Ed. 248 (1894); In re Hohorst, 150 U.S. 653, 662, 14 S.Ct. 221, 37 L.Ed. 1211

(1893); Brown v. Canadian Pac. Ry., 25 F.Supp. 566, 567 (W.D.N.Y.1938); Hall v. Great Northern Ry., 197 F. 488, 489 (D.Mont.1912).

17. 1 Moore, Federal Practice ¶ 0.142[6], at 1512 (2d ed. 1964).

18. Cf. Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 959, 93 L.Ed. 1207 (1949); Gemsco, Inc. v. Walling, 324 U.S. 244, 260; 65 S.Ct. 605, 89 L.Ed. 921 (1945).

19. Accord, State of Maryland, for Use of Mitchell v. Capital Airlines, Inc., 199 F. Supp. 335, 337 (S.D.N.Y.1961). See also, Zacharias v. Ippen, 337 F.2d 445 (10th Cir. 1964).

20. Compare United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir. 1966); Levin v. Ruby Trading Corp., 248 F.Supp.

accords with the present federal and state policy recognizing the right of states to exercise in personam jurisdiction as to nonresidents where the requisite minimum contacts exist.[21] The construction urged by the defendant, confining venue only to a district in which personal service could be effected, would be a throwback to the rigidity of Pennoyer v. Neff,[22] which, as Mr. Justice Black phrased it, "laid down the broad principle that a State could not subject nonresidents to the jurisdiction of its courts unless they were served with process within its boundaries or voluntarily appeared, except to the extent they had property in the State."[23]

The motion to dismiss for lack of proper venue is denied.

### The motion to dismiss by reason of estoppel.

■ The defendant next urges that dismissal of the action is compelled and the Funds are estopped from maintaining this suit because it is brought on their behalf by Ventures, their general partner, which itself is a wrongdoer, and in the event of recovery would share therein, thus becoming a beneficiary of its own dereliction.[24] Defendant's claim, of course, is based upon the activities of Carter and Kung's two other nominees, who constituted a majority of Ventures' board up to 1960 and thereby enabled Kung to control the general partner which, in turn, caused the Funds to enter into the various alleged overreaching transactions. In addition, the defendant urges that two other directors, Clinton Davidson and Raymond Hartz, who owned fifty per cent of the stock of Ventures (the other fifty per cent being owned by Carter), acquiesced in many of the acts now condemned. Thus, the claim is that all the shareholders either directly participated in the conspiracy or knew of it, and consequently that the general partner is itself a wrongdoer and may not bring this suit.

■ At the threshold of inquiry there is a substantial question as to whether the general partner, overreached as it was and used as a conduit in the conspiracy, may be deemed a wrongdoer; the charge here is that Carter and the other two Kung nominees were faithless to the general partner; also overreached in the process were the limited partners. It would indeed be a strange doctrine to bar this suit brought on their behalf

537 (S.D.N.Y.1965) ; State of Maryland, for Use of Mitchell v. Capital Airlines, Inc., 199 F.Supp. 335, 337 (S.D.N.Y. 1961).

21. See, e.g., McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y. S.2d 8, 209 N.E.2d 68 (1965).

22. 95 U.S. 714, 24 L.Ed. 565 (1877).

23. Hanson v. Denckla, 357 U.S. 235, 260, 78 S.Ct. 1228, 1243, 2 L.Ed.2d 1283 (1958) (dissenting opinion).

24. Defendant cites McConnell v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494 (1960), in support of his contention that a party to a fraud may not " 'plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose * * *.' " Id. at 469, 199 N.Y. S.2d at 485, 166 N.E.2d at 496. This case is inapplicable to the instant facts, however. See notes (25)–(27) infra and accompanying text. Defendant also relies on Calkins v. Smith, 48 N.Y. 614 (1872), and Mannaberg v. Herbst, 45 N.Y.S.2d 197 (Sup.Ct.1943), aff'd, 267 App.Div. 818, 47 N.Y.S.2d 100 (1st Dep't), aff'd, 293 N.Y. 657, 56 N.E.2d 255 (1944), apparently to support a contention that a partner may not sue on behalf of a partnership but only on his own behalf. However, the cited cases were decided before the adoption of N.Y. CPLR § 1025, which authorizes suit in the partnership name, and moreover did not deal with limited partnerships. A suit to redress a wrong to a limited partnership may be properly brought by a general partner in the partnership name. See Klebanow v. New York Produce Exch., 344 F.2d 294, 298 (2d Cir.1965) (dictum); Cheyenne Oil Corp. v. Oil & Gas Ventures, Inc., 204 A.2d 743 (Del.1964); Ruzicka v. Rager, 305 N.Y. 191, 198, 111 N.E.2d 878, 39 A. L.R.2d 288 (1953) (dictum). Cf. Perth Amboy Mfg. Co. v. Condit & Bowles, 21 N.J.L. 659 (Ct.Err. & App.1847).

by the general partner because it was successfully corrupted by the defendant.[25] But entirely apart from this dubious doctrine, Clinton Davidson swears that he was without personal knowledge of any acts of wrongdoing upon which plaintiffs' charges are predicated. This presents a material issue of fact to be resolved at the trial,[26] since if Davidson was unaware of the fraud, Ventures would be free to bring this suit on its own behalf against the wrongdoer[27] and surely could, as here, sue on behalf of its cestuis. Should it appear upon the trial that any wrongdoer, because of his position in the general partner, may become a participant in any award, the matter is one to be decided by the trial court upon equitable principles. Thus, for example, whether the share representing the defaulting fiduciaries' interest should be withheld from them or turned over to the innocent victims of the conspiracy is a matter for trial determination.

The motion to dismiss by reason of estoppel is denied.

### The motion to dismiss for laches and statute of limitations.

The defendant next seeks to dismiss the action on the ground it is barred by laches and by the statute of limitations. While the plaintiffs assert that their claim may be considered as one for unjust enrichment, they and the defendant agree that, in any event, the claim is one based upon fraud. The defendant's contention is that Texas' two-year statute for fraud[28] is applicable, since the contracts between the plaintiffs and Cheyenne were to be performed in Texas. The plaintiffs, on the other hand, urge that the six-year statute of New York is applicable.[29] Under both statutes, the period of limitation begins to run from the time the fraud was or reasonably should have been discovered. The instant suit was commenced on September 29, 1965 for fraud allegedly discovered beginning in 1962.

Whether the plaintiffs' suit is time barred must be determined in accord with the body of law which would be applied by New York, the forum state in this diversity suit.[30] New York generally will apply its own limitation period except to causes of action accruing outside New York,[31] to which the New York courts will apply a shorter foreign period of limitation,[32] pursuant to CPLR, section 202. In construing this section, the New York courts have held a cause of action for fraud accrues in the place from which a fraudulent scheme is controlled, not in the place where fraudulent contracts pursuant to the scheme are

---

25. Cf. Vohmann v. Michel, 185 N.Y. 420, 424–425, 78 N.E. 156 (1906); Ludington v. Mercantile Nat'l Bank, 102 App.Div. 251, 92 N.Y.S. 454, 458 (2d Dep't), aff'd, 182 N.Y. 522, 74 N.E. 1119 (1905); Restatement (Second), Trusts § 294, comment c (1959); Bogert, Trusts & Trustees § 955 (2d ed. 1962).

26. Cf. Quintal v. Kellner, 264 N.Y. 32, 36, 189 N.E. 770 (1934).

27. See George Washington Memorial Park Cemetery Ass'n v. Memorial Dev. Co., 139 N.J.Eq. 280, 51 A.2d 221 (1947); 3 Fletcher, Cyclopedia Corporations § 884 (Perm.ed.1965).

28. Vernon's Ann.Tex.Civil Stat.Ann. art. 5526.

29. N.Y. CPLR §§ 206(c), 213(6).

30. See Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Association for Preserv. of Freedom of Choice v. Simon, 299 F.2d 212, 215 (2d Cir. 1962); Lowell Wiper Supply Co. v. Helen Shop, Inc., 235 F.Supp. 640, 645 (S.D.N.Y.1964).

31. See Baker v. Cohn, 266 App.Div. 236, 41 N.Y.S.2d 765 (1st Dep't 1943); W. D. Dunn Co. v. Corwin, 258 App.Div. 609, 17 N.Y.S.2d 577 (1st Dep't 1940); Reisman v. Hall, 257 App.Div. 892, 12 N.Y.S. 2d 442 (3d Dep't 1939). But see Gatti Paper Stock Corp. v. Erie R.R., 247 App. Div. 45, 286 N.Y.S. 669, 672 (1st Dep't), aff'd, 272 N.Y. 535, 4 N.E.2d 724 (1936).

32. The shorter foreign period of limitation will not, however, be applied to any cause of action accruing in favor of a resident of New York.

performed.[33] They have also held that, upon an allegation of conspiracy, determination of the place where the cause of action arose should await the trial.[34] Thus, at least at the present time, it would be improper to dismiss this suit in reliance on the two-year Texas statute, which at best is of doubtful application.

The defendant further contends, however, that a two-year period of limitation must be applied because the contracts between the plaintiff Funds and Cheyenne required that all claims for discrepancies disclosed by periodic audits be presented within two years of an audit. While New York courts do permit parties to provide for reasonable shorter periods of limitation by agreement, such agreements are strictly construed, and the intention to provide a shorter than usual period of limitation must be clear.[35] The fact that claims for discrepancies must be presented within two years does not indicate any clear intention to shorten the statutory limitation period in the event of a suit based upon a breach of the agreement. Moreover, the instant suit charges that the very contracts were instrumentalities to further the fraudulent purpose of the conspiracy.

The motion to dismiss on the ground of the statute of limitations is denied. The motion to dismiss for laches is similarly denied, since the defendant has not specified the basis on which the claimed laches arose.

### The defendant's motion for a stay of this action.

The defendant next urges alternatively that this action be stayed pending final determination of an action previously commenced by these plaintiffs in the Delaware Court of Chancery, wherein the charges substantially parallel those set forth in the instant complaint. In the Delaware action Kung and various corporations and individuals referred to herein as his co-conspirators were named as defendants. The only defendants who appeared were Arthur B. Rothwell, an associate of Kung, and three Delaware corporations, including Cheyenne, who were served through the Delaware Secretary of State.

Kung, as well as the other individuals named as defendants, did not appear, and since all are nonresidents of Delaware, which has no long-arm statute, they were not and are not subject to in personam jurisdiction. However, as to Kung, plaintiffs sequestered shares of stock owned by him in Forward Enterprises, Inc., named as a defendant in the Delaware suit and here as a co-conspirator; thus, to the extent of the value of that stock, plaintiffs have acquired in rem jurisdiction to satisfy any default judgment which may be entered against Kung. While plaintiffs at one time were of the view that the shares were of substantial value, it is now asserted, without contradiction, they turned out to be a will-o-the-wisp, virtually worthless; also, that the three Delaware corporations are largely empty shells. The plaintiffs in this and the Delaware actions charge they were mulcted of $2,500,000 which they seek to recover, and in this action, in addition to that sum, ask punitive damages in the same amount.

Kung, it is charged, was the principal beneficiary of the claimed conspiracy. Since, as a tortfeasor, he is jointly and severally liable.[36] and in per-

33. See Ripley v. International Rys., 8 A. D.2d 310, 188 N.Y.S.2d 62, 77 (1st Dep't 1959), aff'd 8 N.Y.2d 430, 209 N.Y.S.2d 289, 171 N.E.2d 443 (1960).

34. See Hastings v. H. M. Byllesby & Co., 265 App.Div. 653, 40 N.Y.S.2d 307, 310 (1st Dep't 1943), aff'd 293 N.Y. 413, 57 N.E.2d 737 (1944).

35. Dorff v. Taya, 194 App.Div. 278, 185 N.Y.S. 174, 177 (1st Dep't 1920); Hauer Const. Co. v. City of New York, 193 Misc. 747, 85 N.Y.S.2d 42, 44 (App.T. 1948), aff'd 276 App.Div. 841, 93 N.Y.S. 2d 915 (1st Dep't 1949); Sharp v. Foley Bros., 69 N.Y.S.2d 514 (Sup.Ct.1946).

36. See Atchison v. Gulf Refining Co., 174 F.2d 476 (5th Cir. 1949); Smith v. Philadelphia Transp. Co., 173 F.2d 721, 724 n. 2 (3d Cir.), cert. denied, 338 U.S. 819, 70 S.Ct. 63, 94 L.Ed. 497 (1949);

sonam jurisdiction over him has been acquired in this suit, there is no equitable basis for staying it in favor of the Delaware action, where he has thus far declined to submit to jurisdiction. Should plaintiffs prevail in the Delaware action as against those who have appeared, any judgment will be uncollectible, since the sequestered shares of Kung are grossly inadequate to meet the claimed damage. Moreover, the judgment sought in the Delaware action is in personam, and since Kung has not appeared therein, any judgment there obtained would not be res judicata as to him.[37] Under these circumstances, there is no reason to stay this suit.[38] A different situation would be presented for consideration had Kung appeared in the Delaware action—a prospect vaguely hinted by his counsel as likely to occur, but which still remains only a hint.

The motion for a stay is denied.

The further alternative motion
for a transfer of this action.

 The defendant further alternatively moves pursuant to 28 U.S.C., section 1404(a) for an order transferring this action to the United States District Court for the Southern District of Texas, Houston Division, where he resides. The section itself sets forth as the general guidelines to be applied in determining an application thereunder (1) the convenience of parties, (2) the convenience of witnesses, and (3) the interests of justice.[39] While the court's discretion under this section is broader than under the doctrine of forum non conveniens, the criteria are substantially those that were applied under that doctrine as enunciated in the leading case of Gulf Oil Corp. v. Gilbert,[40] except that the plaintiff's choice of forum, formerly "rarely [to] be disturbed," [41] is now of diminished significance, although it is still to be considered.[42] These factors include (1) relative ease of access to sources of proof; (2) availability of process to compel attendance of unwilling witnesses; (3) cost of obtaining willing witnesses; (4) possibility of view of premises, if appropriate to the issues; [43] (5) practicality of where the case can be tried more expeditiously, inexpensively and with relative ease; [44] and (6) the interests of justice, a term broad enough to cover the variant circumstances of each individual case, which in sum reflect that the administration of justice will be advanced by a transfer.[45]

 At the outset it must be recognized that all litigation imposes burdens and inconveniences upon the parties involved and their witnesses to a greater

McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659, 664, 148 A.L.R. 1253 (1943); Baidach v. Togut, 7 N.Y.2d 128, 132, 196 N.Y.S.2d 67, 164 N.E.2d 373 (1959) (dictum).

37. See Mid-Continent Cas. Co. v. Everett, 340 F.2d 65, 69 (10th Cir. 1965); Moore v. United States, 157 F.2d 760, 764 (9th Cir. 1946), cert. denied, 330 U.S. 827, 67 S.Ct. 867, 91 L.Ed. 1277 (1947); United States v. One Dodge Sedan, 113 F. 2d 552 (3d Cir. 1940); Gellman v. L. Karp & Sons, 109 F.2d 391 (7th Cir. 1940).

38. See Landis v. North American Co., 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L. Ed. 153 (1936). Cf. Mandeville v. Canterbury, 318 U.S. 47, 63 S.Ct. 472, 87 L. Ed. 605 (1943).

39. 28 U.S.C. § 1404 provides: "Change of venue. (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

40. 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

41. Id. at 508, 67 S.Ct. 839.

42. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

43. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

44. Cf. Van Dusen v. Barrack, 376 U.S. 612, 643, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

45. Cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507–508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Chicago, R. I. & P. R.R. v. Igoe, 220 F.2d 299, 303 (7th Cir.), cert. denied, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955).

or lesser degree, varying from case to case. But mere inconvenience, interference with one's normal activities, or such other dislocations which follow in the wake of a lawsuit do not by themselves make the necessary showing to warrant a transfer.[46] Thus, it is not sufficient to show that the present forum is an inconvenient one. More is required—the burden is upon the movant to make a clear showing that the proposed transferee district is a more convenient one and that the interests of justice will be better served by a trial there.[47]

To sustain his burden, the defendant stresses (1) that he, C. F. Chien, Arthur B. Rothwell and T. P. Wang, named as co-conspirators with him, all reside in Houston, Texas; (2) that more than thirty other individuals, potential witnesses as to matters touching upon plaintiffs' charges, reside in Texas, Oklahoma or Louisiana; (3) that seven of them reside within the Southern District of Texas; (4) that while the others are beyond subpoena reach because they reside outside the district and more than 100 miles from the courthouse, they may more readily appear as witnesses if the trial is held at Houston; otherwise their depositions will be required; (5) that Cheyenne, the principal corporate conspirator, has a place of business in Houston, Texas, as do three other corporate conspirators; (6) that Cheyenne's records and files pertaining to various transactions are located at its offices in Houston, Texas; (7) that the alleged frauds involve gas and oil explorations, most of them in Texas; (8) that expert witnesses such as geologists, appraisers and others familiar with trade practices relating to gas and oil leases and explorations are more readily available in Texas than in New York; further, that on-site inspection of properties located in Texas is required by the experts in preparation for their opinion evidence.

On the plaintiffs' side the following considerations are advanced: (1) that New York City was the nerve center of Kung's and Ventures' activities which resulted in the depredations upon which the suit is based; (2) seven witnesses, whose testimony is essential to the proper presentation of the Funds' case live within easy and convenient reach of this court; these key witnesses are Clinton Davidson, the current president and a director of Ventures, who was also a director during the conspiracy period; two former officers; the former chief accountant of Ventures, and three accountants associated with a nationwide accounting firm; (3) Carter, who obviously is an essential witness, no matter which party calls him, resides in Washington, D. C., and two other Kung nominees of Ventures reside in St. Louis, Missouri; all are beyond subpoena reach of either court; if they decide to appear voluntarily, a trial in New York is far more convenient for them than in Texas. If they are not willing witnesses and must be deposed, then the place of trial is of no consequence; (4) plaintiffs will require the testimony of two attorneys, New Hampshire residents, who allegedly acted in furtherance of Kung's interests; that, although their pretrial depositions are indicated, should they decide to appear voluntarily as witnesses, a trial in Texas will impose upon them much greater inconvenience than one in this district; (5) five of seven limited partners, six of whose depositions the defendant is about to take in this city, live in either New York City or its environs. The defendant seeks by their depositions to establish knowledge or ratification by the Funds of the various transactions under attack; in this circumstance, the plaintiffs assert that the testimony of their limited partners upon a trial is essential to rebut the defense contention.

46. Cf. United States v. United States Steel Corp., 233 F.Supp. 154, 157 (S.D. N.Y.1964).

47. Peyser v. General Motors Corp., 158 F. Supp. 526, 529 (S.D.N.Y.1958); Robbins Music Corp. v. Álamo Music, Inc., 119 F. Supp. 29 (S.D.N.Y.1954).

*Convenience of parties and close associates:*

Kung is the only defendant in this litigation, but for the purposes of this motion his close aides and associates, Rothwell, Chien and Wang, named with him as co-conspirators, realistically may be considered as parties rather than witnesses. It is clear the trial will center about their testimony on the one side as opposed to that of Davidson and the Funds' six other principal witnesses on the other. The hard core of the basic charges will revolve about their testimony, probably Carter's too, plus the documentary proof.

Kung, the defendant, who operates his own plane, and his three associates would have little difficulty in attending a trial in this district, although to be sure a trial in Houston, Texas, the district of their residences, would serve their greater convenience and correspondingly inconvenience the plaintiffs' seven key witnesses. Neither Kung nor his associates are strangers to this city; it is alleged, without contradiction, that they still come here regularly for the transaction of business, although at times clandestinely. Then, too, none of them has asserted that it would be a hardship to attend a trial in this district.

On the other hand, a transfer may seriously disadvantage the plaintiffs. The importance of live witnesses at a trial revolving about charges of fraudulent conduct is evident. The demeanor of witnesses before the trier of the fact, with an opportunity to appraise credibility, may well mean the difference between acceptance and rejection of crucial testimony.[48] Davidson, a director during significant periods and allegedly familiar with many matters in controversy,

appears to be not only essential, but a vital witness for plaintiffs' cause. The importance of his testimony is perhaps best attested to by the very extensive deposition taken of him by the defendant in the Delaware action. He is now seventy-six years of age. The extensive pretrial activities of the parties suggest that the trial itself is several years distant. If it is conducted here, Davidson, then approaching eighty years, will at the end of each court day have the convenience and comfort of home life. A transfer to Houston, Texas, if his physical condition then permitted and if he decided to appear there, would mean hardship during the trial period. If, instead, his deposition were relied upon, the Funds would be deprived of the benefit of his personal appearance as a witness. So, too, the Funds may lose the benefit of the live testimony of a number of other key witnesses—the former officers and the accountant, who no longer are associated with the Funds. Their present activities and commitments render it unlikely that they will attend a trial in Houston, Texas. Similarly, the seven limited partners who are to be deposed by the defendant would be greatly inconvenienced by a trial in Texas, in consequence of which the Funds may be forced to rely upon depositions in presenting their rebuttal testimony.

*Convenience of witnesses:*

 As to witnesses other than those closely associated with Kung, his counsel has listed some thirty; however, numbers alone do not make out a required case under the rule. The statement by defense counsel that those living in Texas, Oklahoma and Louisiana who are beyond subpoena reach would voluntarily appear for a trial in Houston, but not in

---

48. Cf. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 628, 64 S.Ct. 724, 88 L.Ed. 967 (1944); Dyer v. MacDougall, 201 F.2d 265, 269 (2d Cir. 1952); Ford Motor Co. v. Ryan, 182 F.2d 329, 331 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); Colby v. Klune, 178 F.2d 872, 874 (2d Cir. 1949); Lago Oil & Transp. Co. v. United States, 97 F.Supp. 438, 439 (S.D.N.Y.

1951). See also, NLRB v. Majestic Weaving Co., 355 F.2d 854 (2d Cir. 1966), where Judge Friendly put it this way: "[O]bservation of the witnesses is likely to give a more accurate feel than reading a cold record; something would depend on what manner of man [the witness] was, and whether [his] testimony * * * carried true conviction."

New York, is without evidential support; indeed, it is not alleged that any of these potential witnesses were interviewed by the defense. More important, with but few exceptions, the nature or relevancy of their testimony, or defendant's purpose to rely upon them, is referred to somewhat ambiguously. Thus, referring to former employees of Ventures, it is stated that "it is reasonable to assume that at least some of them will be required as witnesses to testify on behalf of the plaintiffs, or if plaintiffs do not call them, on behalf of the defendant." This general observation does not serve as a substitute for the requirement of setting forth the substance or relevancy of testimony, or that it is intended to rely upon it.[49] In any event, absent a showing that this group of witnesses would voluntarily appear upon a trial, they will have to be deposed if in fact their testimony is desired, and as far as they are concerned, it is of no moment where the trial takes place.

As to the remaining witnesses listed by the defendant—those subject to the subpoena process of the Southern District of Texas—the plaintiffs acknowledge that three brokers in the submission of prospects undertaken by the Funds may indeed offer testimony relevant to the issues. Thus, the inconvenience of these witnesses is a factor to be weighed, together with all others which merit consideration. Plaintiffs, however, urge that any suggested inconvenience to them should be accorded relatively little weight, since the total damage claim centering about their testimony is minimal, $33,000, compared to the $2,500,000 which plaintiffs seek to recover.

On the other hand, four other witnesses, officers of a corporation which entered into an agreement with Cheyenne which plaintiffs attack as fraudulent, do not appear to be possessed of testimony relevant to defendant's cause. Plaintiffs make no claim that the witnesses or the corporation either know of or participated in the fraud whereby the Funds were overreached by reason of that agreement. The charge is levelled solely against the defendant and his alleged co-conspirators.

*Records:*

Both sides agree that the records relating to all transactions under attack are voluminous; plaintiffs, however, contend that not all are required, and those that are relevant can readily be availed of no matter where the trial is had. Plaintiffs' records and books of account are maintained at Bernardsville, New Jersey, or at the Newark office of its accountants and can conveniently be transferred either to New York or Texas.

Defendant, however, presses that the records required by him are at the offices of Cheyenne or of other named corporate co-conspirators at Houston, Texas, and stresses the difficulty of transporting thousands upon thousands of documents to New York. However, experience demonstrates that a weeding-out process in preparation for trial often reduces the relevant documents to manageable proportions. Indeed, plaintiffs' counsel, pursuant to a discovery order authorized in the Delaware action, examined some 15,000 documents in the offices of Cheyenne and others in Texas over a period of weeks, and his efforts produced relevant material now contained in only three and a half file drawers of legal size; these can conveniently be transported to either courthouse.[50] Moreover, the Funds charge that some of the records now in possession of Cheyenne at Houston in fact belong to and are wrongfully withheld from the Funds; if this is so, the defendant, who allegedly controls Cheyenne, should not be heard to advance the plea that it is difficult to bring the records here, where they rightfully belong.

---

49. Cf. Jenkins v. Wilson Freight Forwarding Co., 104 F.Supp. 422, 424 (S.D.N.Y. 1952).

50. Cf. United States v. United States Steel Corp., 233 F.Supp. 154, 158–159 (S.D.N.Y.1964). See also, Ford Motor Co. v. Ryan, 182 F.2d 329, 330–331 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950).

*Experts:*

The three outside accountants, who conducted a complete audit for the Funds with reference to the charges, are essential witnesses. To require them to testify at Houston would impose upon plaintiffs additional expense for their appearance beyond this district.

As to appraisers, geologists and those familiar with trade practices, an affidavit submitted on this motion indicates that, despite defendant's contention to the contrary, such experts are as readily available in this district as in Texas; further, that it is normal practice for lending institutions in this city to make substantial loans upon the type of properties here involved in reliance upon opinions of experts based upon reports and statistical data, and that the experts do not require a personal inspection of the premises. The court is satisfied that no problem is presented in obtaining expert testimony, whether the trial be conducted in this or in the Texas district. The Funds have already engaged an expert on oil and gas investments, who is a local resident.[51] In the event of transfer, his attendance would be required at Texas, or, should he be unwilling because of other commitments or for personal reasons to testify there, another expert would be required; in either event, in this instance too, plaintiffs' expenses would be substantially increased by a transfer.

Other factors warrant consideration. Counsel for the Funds in this suit also represent them and have been active in the Delaware action over a period of almost three years. Their extensive activities in various phases of that suit, including the discovery proceedings thereunder in the effort to unearth documents to support the charges there made against the defendant and the other alleged coconspirators, particularly qualify them to continue with this suit. If the suit were transferred, local counsel would have to be retained, with inevitable delay while new counsel familiarizes himself with the involved factual and legal problems arising out of this and related lawsuits. Transfer would mean not only additional expense to plaintiffs for such local attorney, but even further expense, if present counsel are to associate themselves with the Texas attorney.[52]

Upon a full consideration of the very voluminous affidavits submitted by the parties and an evaluation of significant factors, the court concludes that the defendant has failed to make out a clear case for transfer. Undoubtedly the trial will be as inconvenient in one place as in the other to one party or the other. It is not shown, however, that the convenience of the parties and witnesses or the interests of justice would be better served by a transfer; on the contrary, the disadvantage to the plaintiffs in the presentation of proof necessary to support their charges and the increased heavy financial burden which would result from a transfer, so substantially outweigh factors of inconvenience to the defendant and his witnesses that the interests of justice require that the case remain here.[53] Accordingly, the motion is denied.

### The motion for a more definite statement.

The final motion by the defendant is for a more definite statement of the complaint pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. However, the notice of motion fails to "point out the defects complained of and the details desired," as required by the rule. In any event, the complaint is sufficient to enable the defendant to answer responsively. The details enumer-

51. See Lykes Bros. S.S. Co. v. Sugarman, 272 F.2d 679, 681 (2d Cir. 1959). But see Sypert v. Miner, 266 F.2d 196, 199 (7th Cir.), cert. denied, 361 U.S. 832, 80 S.Ct. 82, 4 L.Ed.2d 74 (1959).

52. Cf. United States v. United States Steel Corp., 233 F.Supp. 154, 160 (S.D.N.Y. 1964).

53. Cf. Van Dusen v. Barrack, 376 U.S. 612, 645–646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

ated in the defendant's brief are more properly the subject of interrogatories under Rule 33 or other available discovery procedures. Discovery is not the purpose of Rule 12(e).[54]

The motion is denied.

**54.** Mitchell v. E–Z Way Towers, Inc., 269 F.2d 126, 132 (5th Cir. 1959); Marquardt-Glenn Corp. v. Lumelite Corp., 11 F.R.D. 175, 177 (S.D.N.Y.1951). Cf. Hickman v. Taylor, 329 U.S. 495, 500–501, 67 S.Ct. 385, 91 L.Ed. 451 (1947).