Emmett J. Schnepp, J.
This is a motion by plaintiffs for an order dismissing the “First” through “Sixth” affirmative defenses, and the “First” and “Second” counterclaims alleged in the amended answer of the Lincoln Rochester Trust Company and for summary judgment.
The action was commenced in January, 1971 to foreclose a mortgage executed and delivered on November 28, 1956 by the Standard Brewing Co., Inc. to the trustees, under a trust indenture dated November 28, 1956, as collateral security for the payment of $290,000 of outstanding brewery bonds. Plaintiffs ’ prior motion for summary judgment against the defendants, Aaron Lewis and Myron Lewis, owners of the mortgaged premises, has been granted, and entry of judgment directed to be held in abeyance pending the occurrence of specified events. (Dye v. Lewis, 67 Misc 2d 426.)
On December 29, 1961 the premises were mortgaged to the Lincoln Rochester Trust Co., and the original trustees subordinated the trust mortgage to the Lincoln mortgage. On May 27, 1965 an additional mortgage loan was granted by Lincoln and the mortgages were consolidated in the total amount of $225,000. On that date the then trustees executed a further agreement which subordinated the lien of the trust mortgage to the lien of the consolidated Lincoln mortgage. Plaintiffs were declared elected and appointed as successor trustees under the provisions of the trust instrument by order of the Honorable Joseph Gr. Fbitsoh, Justice of this court, dated January 19,1971. It is the *436 claim of plaintiffs that the trust mortgage is superior to the consolidated mortgage of Lincoln.
The trust mortgage is in default. The issues for determination here relate to the defenses and counterclaims raised in Lincoln’s answer. It is the contention of Lincoln that the trust instrument gave the trustees authority to subordinate the trust mortgage, and that, in any event, regardless of the existence of such authority, the holders of the bonds secured by such mortgage ratified and affirmed the acts of the original trustees, whose conduct is binding upon such bondholders and the present successor trustees. It is further claimed by Lincoln that the bondholders, by reason of their acquiescence in the acts of the original trustees, are estopped from raising any objections to the legality or validity of the trustees ’ acts, and are further barred by the doctrine of laches. Lincoln also claims that, if it is eventually determined that the lien of the trust mortgage is superior to the lien of Lincoln’s mortgage, then the original trustees have breached the contract embodied in the subordination agreements.
Section 20 of the trust indenture provides as follows: ‘ ‘ ‘ Trustees ’ shall at all times have full power and authority to release, convey or transfer to any party or parties designated by ‘ Mortgagor, ’ or to release from the lien and operation of this Indenture and mortgage herein provided, all or any portion of the real property mortgaged hereunder provided, in the opinion of ‘ Trustees, ’ same can be done without prejudice to the security herein provided for the bondholders. ’ ’
The authority of the trustees is subject to any limitations imposed in the trust instrument, (EPTL 11-1.1, subd. [b]) and every act in contravention of the terms of the trust, except as authorized by law, is void. (EPTL 7.24.) Lincoln does not question its chargeability with notice of the terms of the trust indenture and the limitations imposed therein on the authority and powers of the trustees. Lincoln had notice of the trust and was under a duty to inspect the trust instrument. To spell out a power on the part of the trustees to subordinate the lien of the trust mortgage it would be necessary to give the language of the trust instrument a strained and distorted construction. A plain reading of section 20 discloses no power to subordinate. The trust instrument states that the real property was mortgaged for the equal and proportionate benefit and security of all present and future holders of the bonds, without preference by reason of priority in the time of issue thereof or otherwise and that the lien and security of the bonds was effectual from the date of execution of the indenture and trust *437 mortgage. The indenture itself made provision for the form of the bonds and their issue. The purpose of the mortgage and the convenants of the mortgagor were set forth in full. These bondholders surrendered 7% preferred stock for their bonds and the intent of this instrument was to provide security for the payment of these bonds and protect the interest of the bondholders. Section 11 of the trust instrument provided that the mortgagor would pay all taxes levied on the property and observe all valid requirements of governmental authority relative thereto and ‘ ‘ not suffer any lien to be hereafter created upon said mortgaged property prior to the lien ” of the trust mortgage. An examination of the trust instrument neither reflects the power in the trustees to reduce the bondholders’ security from a senior to a junior status nor the intent of the mortgagor to grant such authority to them. Although Lincoln claims that the mortgage proceeds were designed to improve the premises, thereby promoting the security of the bondholders, the attention of the court has not been called to any provisions in the instruments held by it which would expressly or impliedly earmark the mortgage proceeds for any specific purpose or which would constitute a default of such mortgages upon failure to use the mortgage proceeds to improve the subject real property.
The power given to a trustee to sell does not include the power to pledge (First Nat. Bank of Paterson v. National Broadway Bank, 156 N. Y. 459, 471), nor does the power given to a trustee to sell real property include the power to exchange (Trimboli v. Kinkel, 226 N. Y. 147) or the power to mortgage. (King v. Pelkofski, 24 A D 2d 1003.) The power of a trustee to subordinate a mortgage may not be presumed and Lincoln has failed to establish any authority in the trustees to do such acts. (Kaufman v. Flagg Corp. 227 App. Div. 98.) Accordingly, it is held that the ‘ ‘ First ’ ’ affirmative defense is insufficient as a matter of law, raises no triable issue of fact and is dismissed.
Unauthorized acts of prior trustees are not binding upon their successors. (First Nat. Bank of Paterson v. National Broadway Bank, supra.) Accordingly the “Second” and “Third” affirmative defenses, which allege that the present trustees are bound by the acts of a majority of the consenting bondholders who ratified the acts of the prior trustees, are insufficient as a matter of law, raise no triable issue of fact and are dismissed. This same ruling applies to the “First” and “Second” counterclaims interposed by Lincoln. In view of this holding, Lincoln is not entitled to summary judgment and its request for such relief is denied.
*438 Lincoln’s further contentions are related to the effect of the conduct of the bondholders and the claim that various equitable defenses of ratification and affirmance, estoppel, unjust enrichment and laches apply. These equitable claims are necessarily limited in their application to the acts of the prior trustees as they affect Lincoln. If Lincoln is successful in sustaining the burden of proof imposed on it and establishing such equitable claim against all or some of the bondholders, the interests of such bondholders to the extent the trustees stand in their shoes would then become subordinate to the Lincoln mortgage. Similar equitable defenses were raised in the answer of the defendants Lewis which the court passed upon in its decision, dated August 27, 1971. (Dye v. Lewis, 67 Misc 2d 426, supra.) If the defendants Lewis are successful in establishing such equitable defenses and claims against some or all of the bondholders, the amount for which the trustees would be permitted to foreclose the mortgage would be diminished to the extent of the interest of such estopped bondholders.' (Vohman v. Michel, 185 N. Y. 420.) General rulings made by the court in the defendants Lewis’ decision are also applicable here, namely, that the trustees alone have the right to institute the within foreclosure action and that such unnamed bondholders are in fact not now parties to this action. Lincoln, however, should have the same rights as the defendants Lewis to interpose such equitable claims. The law is clear that beneficiaries of a trust, who participated in or approved illegal acts of trustees with respect to the trust property, in a later action by the trustees may be held to be estopped from claiming that such acts were done without authority (Vohman v. Michel, supra; Joseph v. Herzig, 72 Misc. 475, 476). Such claims, however, may not be raised as an equitable defense against plaintiffs in their representative capacity as trustees, because of their lack of power to perform the acts in question, which lack of power cannot be made good under any equitable principle. (Vohman v. Michel, supra, pp. 424-425; Stahl Soap Corp. v. City of New York, 9 A D 2d 964.) It is noted that the defendants Lewis have instituted third-party proceedings against the bondholders which they contend are subject to their equitable claims and many of these individuals may now be before the court in this action.
These affirmative defenses, which are not properly interposable against plaintiffs in their representative capacity, are insufficient as a matter of law, raise no triable issue of fact and are dismissed. Further, since there is no proof controverting the validity of the mortgage or the default, plaintiffs ’ motion for summary judgment is granted. The answer and defenses are *439 dismissed subject to leave to Lincoln to utilize any procedural method permitted by the CPLR within 20 days after the entry of the order herein, to charge such bondholders with such equitable claims. The entry of judgment shall be held in abeyance pending the further action of Lincoln and the defendants Lewis.